[Crim. No. 43040. Second Dist., Div. Three. Feb. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS DUNNAHOO, Defendant and Appellant.

COUNSEL

Rowan K. Klein for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward T. Fogel, Jr., Mark Alan Hart and Patra C. Woolum, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Thomas Dunnahoo (Dunnahoo) appeals from a judgment following conviction by a jury of two counts of child molestation (Pen. Code, § 288, subd. (a)) and two counts of orally copulating a person under the age of fourteen (Pen. Code, § 288a, subd.

(c)). The information charged the offenses occurred between February 9 and August 8, 1980. Dunnahoo was sentenced to eight years in prison.

We have concluded that Dunnahoo had a fair trial under the circumstances of this case, and we therefore affirm the conviction with a sentence modification.

## FACTUAL BACKGROUND

Rebecca and Tara, both five years old, lived with Dunnahoo in 1980 and were seven and a half years old at the time of trial. They testified to living in a bizarre sexual environment during their stay with Dunnahoo. He showed them pornographic magazines and films depicting naked males and females engaged in acts of oral copulation. The children were the subjects of movies taken by Dunnahoo wherein they were instructed to disrobe and to emulate the conduct shown in the films and to orally copulate each other.

Dunnahoo kept sexual "toys" in the form of a penis and vagina with fake hair and taught the girls how to play with them. They were instructed in a masturbation technique with the penis. Thereafter, Dunnahoo made Rebecca masturbate his penis until he ejaculated. Rebecca was directed to rub the toy vagina and then to rub herself the same way. Sometimes she was told to repeat the rubbing activity on Tara.

After striking the girls severely, he forced them to engage in oral copulation of his penis to an ejaculation.

In the early part of 1980, one Thomasina, who was about 15 years old at the time, moved into Dunnahoo's house for a place to live in exchange for housework, babysitting and helping with his film work. The films she worked on involved numerous pornographic films, which she edited and spliced. These films were shown in the presence of Rebecca and Tara. She also saw the fake sexual organs which Dunnahoo kept in a drawer and observed the girls play with them under his direction. She witnessed acts of oral copulation between Dunnahoo and Tara and other sexual touchings. Dunnahoo told her he was teaching the girls about the "birds and the bees." Eventually, Thomasina told the police what she had seen and the girls were removed from Dunnahoo.

## DEFENSE

Dunnahoo took the mothers and the girls into his home when they needed a place to stay, and when the mothers left, Dunnahoo took care of the girls, Rebecca for only short periods of time. Thomasina lived with them too. He

denied any of the sexual misconduct attributed to him, and claimed Tara was lying.

## CONTENTIONS

Dunnahoo contends that (1) the trial court committed prejudicial error in failing to instruct the jury *sua sponte* regarding the effect of the "doctrine of election"; (2) he was denied effective assistance of counsel; and (3) the case must be remanded for sentencing as the trial court failed to state reasons for denying probation or for imposing a consecutive term and failed to award appropriate conduct credit.

## DISCUSSION

1. *No prejudicial error in trial court's failure sua sponte to instruct the jury on the effect of the "doctrine of election."*

(a) *Precedents revisited.*

The fact situation herein presents yet another in a long line of cases, including *People v. Moreno* (1973) 32 Cal.App.3d Supp. 1 [108 Cal.Rptr. 338], *People v. Alva* (1979) 90 Cal.App.3d 418 [153 Cal.Rptr. 644], *People v. McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], *People v. Epps* (1981) 122 Cal.App.3d 691 [176 Cal.Rptr. 332], and *People v. Deletto* (1983) 147 Cal.App.3d 458 [195 Cal.Rptr. 233]) that have come down since *People v. Castro* (1901) 133 Cal. 11 [65 P. 13] and *People v. Williams* (1901) 133 Cal. 165 [65 P. 323] were decided by the Supreme Court in 1901. These cases deal with problems that arise when a violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged. This case is a variation on the same theme, involving as characterized by the *Alva* court, the "*Castro-Williams* principles." (*People v. Alva, supra,* 90 Cal.App.3d at p. 425.) However, the most recent case in the line, *People v. Gitchuway* *(Cal.App.), has put a hitch in the evolved and accepted rationales.[1]

In the seminal *Castro* case, the defendant was charged with one count of rape on a specific date. The evidence disclosed four separate acts over several months, none occurring on the date specified.

The instructions permitted the jury to convict the defendant if any one of the acts were established beyond a reasonable doubt. In upholding the grant-

---

[1]The People filed a petition for hearing in *Gitchuway*; however, it was filed one day late and the Supreme Court denied a request for relief from default. Therefore, the case is final.

*Reporter's Note: On May 31, 1984, subsequent to the finality of *People v. Dunnahoo,* the Supreme Court ordered that *People v. Gitchuway* not be published in the Official Reports.

ing of a new trial, the Supreme Court stated that "[t]he state, at the commencement of the trial, should have been *required to select* the particular act upon which it relied . . . . This was not done; and even conceding that the failure to make such election at that time did not constitute error because of the want of demand upon the part of the defendant . . . , when the case went to the jury, the court, in some form, should have *directed their minds to the particular act* of intercourse which it was incumbent upon the state to establish by the evidence, before a verdict of guilty could be returned against the defendant." (Italics added, *People* v. *Castro, supra,* 133 Cal. at pp. 12-13.)

*Williams* was a similar case of the same vintage wherein the defendant was charged with statutory rape and evidence of many uncharged sex acts was introduced. There, the jury was instructed that if it found that the defendant had sexual intercourse with the victim any time within three years prior to the filing of the indictment, it must find the defendant guilty.

In reversing, the Supreme Court adhered to the position it had enunciated a few months earlier in *Castro* stating: "[t]he jury were [*sic*] not even told that they must all agree that some specifically described act had been performed." (*People* v. *Williams, supra,* 133 Cal. at p. 168.) The court went on to question incredulously, "[a]nd how could [the defendant] defend when he was not informed as to what particular offense out of the hundreds testified to . . . he was to be tried?" (*Id.,* at p. 168.)

The cases involving variances between charge and proof continued to reach appellate courts following these two early Supreme Court cases, which courts attempted to give credence to the legislative intent as expressed in criminal statutes, and at the same time, to protect the rights of the accused to a fair trial.

The 1973 case of *Moreno* did not involve alleged unlawful sexual conduct. There, Moreno was tried on one count of resisting an officer, but evidence was introduced as to two incidents. The trial court refused to require an election *and* did not instruct the jury that it must unanimously agree as to which incident it found the defendant guilty of in order to convict.

The *Moreno* court reversed, concluding that "it was error for the trial court not to require an election by the prosecution before the case went to the jury *or* at least to give an instruction to the jury that 12 of the jurors must unanimously agree as to the commission by the defendant of *one of* the acts of resistance . . . ." (First italics added, *id.,* 32 Cal.App.3d Supp. at p. 9.)

In *Alva,* decided in 1979, the defendant was charged with three unlawful sex acts on a 14-year-old girl. The prosecution presented evidence of numerous acts of sexual intercourse occurring over a period of some six months. The jury was not informed by the prosecution or the trial court of the specific acts upon which the prosecution intended to rely to prove each of the alleged offenses, and defense counsel made no demand for such an election. Further, the jury was not instructed that it must unanimously agree upon the same act in order to convict. (*People* v. *Alva, supra,* 90 Cal.App.3d at p. 423.)

The *Alva* court reversed, applying the "*Castro-Williams* principles" because there was proof of similar uncharged acts *without an election or appropriate instructions.* (*Id.,* at pp. 425-426; see also *People* v. *Epps, supra,* 122 Cal.App.3d at p. 704.)

This line of cases reflect the development by the courts of the "either/ or" rationale spelled out in *Moreno* and *Alva.* In *People* v. *Madden* (1981) 116 Cal.App.3d 212, 216, fn. 4 [171 Cal.Rptr. 897], where evidence of more sex acts was introduced than were charged, the court noted that "[t]he *Castro* rule is inapplicable where . . . only the offense charged is proved [citations] or where CALJIC No. 17.01 or a similar instruction in fact is given . . . ."[2]

The Supreme Court spoke to this point as recently as 1982 in *People* v. *Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971] and citing to *Castro* stated flatly: "There simply is no escape from the fact that two separate violations of section 165 were proved under the umbrella of count I and that at no point was the prosecution required to elect between the two violations; nor was the jury instructed that it had to find unanimously that Diedrich had committed at least one of them."

Then along came *Gitchuway** decided in 1983, and raises the question whether *Castro* and *Williams* as interpreted by *Gitchuway* mandate an election in every such fact situation. We conclude to the contrary.

(b) *Due process requirements.*

The precise issue we are presented with by the fact situation here and the case precedents has become clouded. ▮▮▮ We are now faced with a

---

[2]CALJIC No. 17.01 reads: "The defendant is charged with the offense of —. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

*See Reporter's Note, *ante,* at page 568.

hybrid of the broadened election doctrine, adequacy of charging instructions, but primarily, with a question of "fair notice" to the accused so as to enable a defense. ██ ██ The statutes on their face, charging child molestation and oral copulation of a person under the age of 14, are adequate in that " '[f]air notice' requires only that a violation be described with a ' "reasonable degree of certainty" ' [citation] so that 'ordinary people can understand what conduct is prohibited.' [Citation.] The notice provided must be such that prosecution does not 'trap the innocent' without 'fair warning.' " (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 270-271 [198 Cal.Rptr. 145, 673 P.2d 732].)

██ The problem arises because the four charged acts here are alleged to have taken place between February 9 and August 8, 1980, and because the child witnesses testified to more than four acts occurring during that time.

██ "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].)

██ Whether an accused has been adequately advised depends on the nature of the crime *and the available defenses thereto.* Following an indictment or information, a preliminary hearing, and criminal discovery, a defendant should be sufficiently advised of the charge or charges to be able to plan a defense. If a defense is to be alibi as to all or part, or misidentification, to charges as alleged here, a defendant can request, and force, an election at the outset of a trial or at some time prior to trial, and thereby be protected from surprise. The Supreme Court observed in the recent case of *People* v. *Beeman* (1984) 35 Cal.3d 547, 562-563 [199 Cal.Rptr. 60, 674 P.2d 1318], when discussing the adequacy of instructions that "[u]nder these circumstances, where *the defense centered on the element as to which the jury was inadequately instructed* . . . we cannot find the error harmless." (Italics added.) Such was not the case here.

In *Gitchuway* the defendant was charged with another person in an 11-count information with various sex offenses with minors, occurring over a period of about 2 years. *There was a motion to require the prosecution to select the specific acts constituting the 11 acts charged which was denied.* The defendants appealed the conviction, contending it was impossible to defend in light of the innumerable, unlawful sex acts testified to during trial. (*People* v. *Gitchuway, supra,* *(Cal.App.).)

The jury was given the CALJIC No. 17.01 instruction that it must unanimously agree to the act constituting the charged offense before it could convict.

*See Reporter's Note, *ante,* at page 568.

However, the *Gitchuway* court observed that such an instruction did not ". . . meet the problem or constitute the equivalent of an election." (*Id.*, [see Reporter's Note, *ante*, p. 568].) The court's understanding of the "rationale of *Castro* and *Williams*" caused it to conclude that the CALJIC No. 17.01 jury instruction was inadequate as a cure and that the "demand of due process that an accused be advised of the charges against him so that he may have a reasonable opportunity to prepare and present his defense at trial" *requires an election.* (*Id.*) Thus, the *Gitchuway* interpretation has departed from established case law sanctioning the "either/or" rationale.

(c) *Application here.*

■ In the case before us, *Dunnahoo made no request for an election* and the trial court on its own did not require the prosecution to select the specific dates on which the four counts of alleged unlawful sexual acts occurred within the approximate six-month period charged. As might well be expected from the fact situation herein, the two 7½-year-old victims testified to numerous such acts, being unable to be more specific about dates. However, the jury *was* given the unanimity instruction. (CALJIC No. 17.01.)

Dunnahoo did not defend on the basis of alibi or identity. Under the circumstances, an alibi or identity defense would be unavailing where as here, Dunnahoo lived with the victims for an extensive, uninterrupted period, day and night. Such a living arrangement permitted continual access to the vulnerable youngsters, trusting as they were of Dunnahoo as a surrogate parent. Further, certain of the illicit sexual conduct took but a moment or two to perform, such as unlawful touchings, and yet constituted criminal acts.

In reason, neither alibi nor wrongful identification would ever be offered as a defense. Credibility would be the only issue in these fact situations, and since the prosecution always has the burden of proving guilt beyond a reasonable doubt, an accused can stand mute and attack the credibility of complaining witnesses. Where the accused is a stranger to the victim and/or the household and allegedly committed a single unlawful act, an alibi or identity defense might be crucial.

Again, the victims here were a mere five years old at the time they were subjected to Dunnahoo's conduct, and but seven and a half when they were called upon to recount their experiences at trial. Although they were found competent to testify, they did not have the ability to pinpoint the exact dates of the many weird sexual happenings, a recall feat not to be expected even of older victims. One youngster testified in a characteristically childish man-

ner that she sucked Dunnahoo's penis "a lot," and that "sometimes" or "lots of times" she touched his penis.

Forcing the prosecution to an election in fact situations such as the not untypical one before us may create an anomalous result: the prosecution may feel bound to charge dozens of acts, and if a defendant is convicted, such convictions could result in extremely long sentences. Or, we may find that only those defendants who select more mature victims with better memories will be subject to prosecution, or only the *one time* offenders.

The Legislature has decreed that sexually deviant acts committed against children constitutes *criminal* conduct. Persons so accused have the right to be advised of the charges so as to have a reasonable opportunity to prepare and present a viable defense and not to be taken by surprise by evidence offered at trial. (*In re Hess, supra,* 45 Cal.2d at p. 175.)

Here, Dunnahoo did not claim surprise at the trial level, even though numerous uncharged acts were forthcoming. He chose to take the stand and deny the charges, suggesting by his testimony that these five-year-olds *initiated* sexual contact with him spontaneously and on their own. He even testified that on one of the victim's fifth birthday, or near thereto, he thought he was having a wet dream and awoke to discover this child sucking his penis! Similarly, on another occasion, he awoke to find the girls giggling and touching his penis. The defense for the jury to evaluate was simply one of credibility. The *Gitchuway* rationale is not persuasive in this case.

■■ (d) *Failure to instruct regarding first four crimes in evidence.*

Dunnahoo argues that since he did not move to force an election by the prosecution, by operation of law, only the first four crimes in evidence were admissible as proof of the charged offenses, and evidence of other crimes was not admissible for that purpose. He contends that the trial court had a sua sponte duty to instruct the jury that it could only consider evidence of the other 11 crimes for certain limited purposes, citing to *People* v. *Koller* (1904) 142 Cal. 621, 624 [76 P. 500].

*Williams* did opine that in the absence of an election, "the first evidence which would tend in any degree to prove an offense shall be deemed a selection, . . ." (*People* v. *Williams, supra,* 133 Cal. at p. 169.) The *Alva* court citing to *Williams,* held that the trial court should have instructed the jury *either* that, in the absence of an election, the first offense proven is the one deemed elected, *or* that the jury must agree unanimously on one act. (*People* v. *Alva, supra,* 90 Cal.App.3d at pp. 423-424.) The CALJIC No. 17.01 instruction was *not* given in *Alva.*

Neither *Williams* nor *Alva* place a *sua sponte* duty on the trial court. The Supreme Court indicated in *People* v. *Collie* (1981) 30 Cal.3d 43, 63 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], that the trial court has no *sua sponte* duty to instruct on the limited admissibility of other crimes evidence. (Accord, *People* v. *Holbrook* (1955) 45 Cal.2d 228, 233 [288 P.2d 1]; *People* v. *Weitz* (1954) 42 Cal.2d 338, 347 [267 P.2d 295]; *People* v. *Haylock* (1980) 113 Cal.App.3d 146, 150 [169 Cal.Rptr. 658].)

■ Moreover, when the uncharged offenses constitute evidence of a lewd disposition or the intent of the defendant towards a particular individual or individuals, as in the present case, the evidence is admissible because it tends to prove that the defendant acted to pursue his desires. (*People* v. *Stanley* (1967) 67 Cal.2d 812, 816 [63 Cal.Rptr. 825, 433 P.2d 913]; *People* v. *Barney* (1983) 143 Cal.App.3d 490, 494 [192 Cal.Rptr. 172].) Such evidence is not reflective of Dunnahoo's bad character or his disposition to do wrongful acts and, therefore, the statutory exclusion pursuant to Evidence Code sections 352 and 1101, is inapplicable. (*People* v. *Barney, supra,* at p. 494.)

An exception to the admissibility of other crimes evidence under these circumstances is where the evidence is limited to the uncorroborated testimony of the prosecuting witness. (*People* v. *Stanley, supra,* 67 Cal.2d at p. 817.) ■ However, the exception does not apply to the present case because Tara's testimony is corroborated by evidence of Dunnahoo's behavior with Rebecca and vice versa. Also, Thomasina's testimony further corroborates each of the girls' testimony.

Therefore, since evidence of Dunnahoo's other uncharged sexual acts goes to the element of his intent to commit the charged offense of child molestation, such other acts would not have been the proper subject of a limiting instruction.

2. *Error if any harmless.*

As noted in *People* v. *Deletto, supra,* 147 Cal.App.3d at page 474, footnote 10: "In any event, assuming, arguendo, the prosecutor should have elected the act constituting the crime 'at least as early as the commencement of trial' (*Williams, supra,* 133 Cal. at p. 169), so that the defense could have reasonable notice of the charge requiring a defense, the prosecutor's failure to elect, in the circumstances of this case, constituted harmless error beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Viewed in its entirety, the record indicates defendant would not have been aided one iota had the

prosecutor selected one of the two acts of oral copulation as the charged offense."

The jury obviously believed the two child witnesses who related sexual experiences far too bizarre to have been imagined. Thomasina testified to having observed some of the sexual activities that were the subject of the youngsters' testimony. Other adults witnessed the abnormal reactions and conduct of the little girls after they were taken away from Dunnahoo and these witnesses shared their observations with the jurors. Dunnahoo's attack on the prosecution witnesses' credibility was unavailing, and testimony in his own behalf was incredulous.

Dunnahoo himself testified that some of the acts of sexual contact took place, but named the five-year-old girls as the initiators and described the extent of his own participation as awakening from a wet dream to find the girls fondling him.

No prejudicial error occurred as a result of the trial court's not instructing the jury *sua sponte* on the effect of the doctrine of election, as interpreted by Dunnahoo.

3. *Dunnahoo received effective assistance of counsel.*

Dunnahoo argues that he was denied the effective assistance of counsel because: His attorney did not move for an election, failed to object or to limit the admission of evidence of other criminal acts and elicited evidence of other crimes on cross-examination, did not request a limiting instruction regarding the admissibility of uncharged offenses, and failed to object to expert police testimony and to prosecutorial misconduct.

■ The burden is on the defendant to show that trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, which failure resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) This test has been expanded under *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144], to add that a defendant may establish incompetency of counsel by proving that counsel failed to perform with reasonable competence and that it is reasonably probable that a more favorable result would have been forthcoming in the absence of counsel's alleged failings.

■ At the outset, our review of trial counsel's competency is limited to the record before us because Dunnahoo has not filed a corresponding petition for habeas corpus which could admit evidence outside the record on

this issue. (See *People* v. *Pope, supra,* 23 Cal.3d at pp. 426-427, fn. 17; *People* v. *Apodaca* (1978) 76 Cal.App.3d 479, 489, fn. 3 [142 Cal.Rptr. 830].) Reviewing the various alleged counsel failings, the record discloses that Dunnahoo's counsel conducted himself in a manner expected of a reasonably competent attorney acting as a diligent advocate.

(a) *Failure to move for election inconsequential.*

■ In accordance with our prior discussion, since Dunnahoo's only legitimate defense was one of credibility, failure of his counsel to force an election does not amount to ineffective counsel. The prosecution witnesses' credibility was tested by thorough cross-examination. Pursuant to predetermined trial strategy, Dunnahoo took the stand and also contradicted their testimony. The jury was given the CALJIC No. 17.01 unanimity instruction. Thus, on this issue, his trial counsel acted in a manner expected of a reasonably competent attorney.

(b) *Admission of uncharged offenses.*

■ As already discussed, evidence of other uncharged sexual acts were admissible to prove, as an element of the offense, that he committed the acts "with the intent of arousing, appealing to, and gratifying the lust or passions or sexual desires of [himself] or of [the children]." (Pen. Code, § 288, subd. (a).) Therefore, these uncharged offenses were not the proper subject of a limiting instruction and Dunnahoo's counsel was not ineffective for failing to object to such evidence or to request a limiting instruction.

Dunnahoo also claims that his counsel should have objected to evidence regarding his possession of pornographic films, his showing of such films to the children, and his kissing one of the children. However, all of this evidence was also relevant to prove an element of the child molestation offense with which he was charged, i.e., that he committed the acts "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [himself] or of [the children]." (Pen. Code, § 288, subd. (a).)

Lastly, Dunnahoo protests the fact that his counsel failed to object to testimony by one of the children on cross-examination that he had licked her vagina on two occasions, in addition to failing to object to evidence that he had once hit a lady. The former evidence was merely cumulative and Dunnahoo was not harmed thereby.

The evidence relating to the fact that he had once hit Thomasina was admitted, not as evidence of an uncharged offense, but as relevant to show

why she feared him and initially was frightened to divulge information to the police.

(c) *Admission of opinion evidence.*

 There was evidence that Rebecca and Tara did not immediately tell the police about the acts Dunnahoo had committed. Therefore, obviously concerned with bolstering Tara and Rebecca's credibility, the prosecution questioned two officers qualified as experts in the field of child molestation, whether it was unusual for a victim of child molestation to be reluctant to tell the truth. Both testified that based on their training and experience, a sexually molested child finds it quite difficult to talk about sexual indiscretions with an adult.

The officers' testimony was admissible as opinion testimony by an expert witness pursuant to Evidence Code section 801 because the subject of child molestation and more particularly, the sensitivities of the victims, is knowledge sufficiently beyond common experience such that the opinion of an expert would be of assistance to the trier of fact.

(d) *Alleged prosecutorial misconduct.*

 After Dunnahoo's counsel suggested in his closing argument that the Los Angeles Police Department and the district attorney's office had somehow influenced the children's testimony, the prosecutor made the following remarks to the jury, which Dunnahoo presently objects to: ". . . and I will not respond to that because any personal response is irrelevant to your deliberations in this case. [¶] Perhaps after the trial that might be something to talk about, but it doesn't come into your deliberations, anything I feel about those accusations."

Viewing the prosecutor's remarks in context, it appears that the prosecutor was simply telling the jury that defense counsel's comments were personal observations not substantiated by the evidence and therefore not relevant to the jury's deliberations. The prosecutor's remarks were directed at defense counsel and not at Dunnahoo, therefore, Dunnahoo was not harmed by the remarks. (*People* v. *Perry* (1972) 7 Cal.3d 756, 790-791 [103 Cal.Rptr. 161, 499 P.2d 129].)

Dunnahoo also cites the prosecutor's comment that the children were the victims of their parents and other adults who lived in Dunnahoo's household. However, this remark, if anything, suggests that perhaps some of the responsibility should be taken away from Dunnahoo and, hence, Dunnahoo was not prejudiced thereby.

During closing argument, trial counsel for Dunnahoo characterized Dunnahoo as a businessman and respectable member of the community. In rebuttal, the prosecutor responded by suggesting that Dunnahoo had not provided proper care for Tara and Rebecca because he brought in transient women to care for the children and occupied himself with the care and distribution of pornographic films. Dunnahoo has failed to demonstrate how this comment prejudiced him. Further, evidence to this effect was introduced which supported the prosecutor's comment.

■ Contrary to Dunnahoo's assertion, it was not improper for the prosecutor to request that the jury do its duty and dispense justice. (*People* v. *Shaw* (1965) 237 Cal.App.2d 606, 624-625 [47 Cal.Rptr. 96].)

■ The trial court instructed the jurors that they had to decide the case on the basis of the evidence received in court and could not consider the statements of counsel as evidence. For this reason, and our discussion *ante,* we conclude that any alleged prosecutorial misconduct did not cause a miscarriage of justice.

4. *The abstract of judgment must be modified to reflect three additional days of good time/work time credit.*

■ Dunnahoo urgues a remand of this case for resentencing because the trial court failed: To articulate its reasons for denying probation; to state its reasons for imposing a consecutive sentence; and to grant good time/work time credit for time spent in presentence custody.

■ Dunnahoo's first argument is answered by *People* v. *Edwards* (1976) 18 Cal.3d 796, 799 [135 Cal.Rptr. 411, 557 P.2d 995], in which the Supreme Court held that a statement of reasons by the sentencing judge for denying probation is neither constitutionally required nor required as a matter of judicial policy. *Edwards* pointed out that the record on appeal affords a reviewing court an adequate basis for determining whether the order denying probation constitutes an abuse of discretion. (*Id.,* at pp. 803-805; accord *People* v. *Prater* (1977) 71 Cal.App.3d 695, 700 [139 Cal.Rptr. 566].)

In denying probation in this case, the trial court considered Dunnahoo's lack of remorse (see Cal. Rules of Court, rule 414(d)(9)), and clearly, based on this record, *no* abuse of discretion was committed in the denial of probation.

■ A trial court should state the reasons for its sentence choice on the record at the time of sentencing. (Pen. Code, § 1170, subd. (c).) However,

if a review of the entire record supports the sentence rendered, courts have been reluctant to remand for resentencing. (*People* v. *Swanson* (1981) 123 Cal.App.3d 1024, 1033-1034 [176 Cal.Rptr. 915]; *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780].)

 Here, the probation report was read and considered by the trial court and it listed the following circumstances in aggravation: (1) The victims were particularly vulnerable; (2) the crime involved multiple victims; and (3) Dunnahoo took advantage of a position of trust to commit the offense. The record supports a finding that these aggravating circumstances were present, and are sufficient to impose consecutive sentences pursuant to California Rules of Court, rule 425.

It is improbable that a result more favorable to Dunnahoo would be obtained by a remand for resentencing. Like the *Blessing* court, we are unwilling to expend valuable judicial resources by engaging in idle gestures or merely adhering to ritualistic form.

Finally, Dunnahoo points out that he was not given good time/work time credit for the seven days he spent in presentence custody. The Attorney General concedes the point. Dunnahoo is entitled to three days of good time/work time credit. (See *In re Allen* (1980) 105 Cal.App.3d 310, 315 [164 Cal.Rptr. 319], for computation of such credits.) Accordingly, the abstract of judgment is ordered modified to reflect that Dunnahoo is entitled to 10 days credit. Once modified, a new copy of the abstract of judgment should be forwarded to the Department of Corrections.

DISPOSITION

For the reasons set forth herein, the judgment is to be modified to reflect 10 days of credit. Otherwise, the judgment is affirmed.

Lui, J., and Danielson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 24, 1984. Mosk, J., was of the opinion that the petition should be granted.