[No. E009660. Fourth Dist., Div. Two. Sept. 16, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ENRIQUE RIOS, Defendant and Appellant.

**COUNSEL**

John Ward, under appointment by the Court of Appeal, and William J. Capriola, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis, Frederick R. Millar, Jr., and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### TIMLIN, J.—

### I.

### INTRODUCTION

Enrique (Kiko) Rios (defendant) appeals from his conviction of violating Penal Code section 288, subdivision (a), by committing a lewd and lascivious act on his then nine-year-old son, R.

Defendant was charged in an amended information with two counts of violating Penal Code section 288, subdivision (a). In both counts it was alleged he committed a lewd and lascivious act on a child under 14 years of age. As to each count it was further specially alleged that he had occupied a position of special trust, and that the act committed was one of substantial sexual conduct, i.e., sodomy or oral copulation, all within the meaning of Penal Code section 1203.066, subdivision (a)(9). Count 1 alleged he committed such acts on his then five-year-old son, J., on or between June 30, 1987, and June 30, 1988. Count 2 alleged he committed acts against his then nine-year-old son, R., on or between June 1, 1988, and June 30, 1988.

The jury deadlocked on count 1, and the People dismissed that count and its accompanying special allegation. The jury returned a verdict of guilty on count 2, and also found the special allegation pursuant to Penal Code section 1203.066, subdivision (a)(9) to be true.

Defendant asserts on appeal the following errors requiring reversal: (1) The trial court erred in not allowing defendant to cross-examine the complaining witness regarding prior inconsistent statements; and (2) ineffective assistance of trial counsel (a) in her failure to move to exclude inadmissible corroborating hearsay evidence and (b) in her failure to stipulate that defendant's intent was not in issue.

### II.

### FACTS

Defendant married Cynthia Rios in 1979.[1] They had two children, R., born February 10, 1979, and J., born June 30, 1982. They separated quite

---

[1]Cynthia's surname had changed by the time she testified at trial because she had remarried. We will refer to her as Cynthia in this opinion.

a few times during the marriage, and finally concluded in 1986 that the marriage could not be saved. According to Cynthia, after 1986, she and defendant rarely had sexual relations. Although defendant lived with his mother, who apparently then resided in Pico Rivera, he continued to come and go at will to the family home in Ontario, which was less than a mile from his place of employment. Cynthia obtained a job in 1987, when J. was five, and worked Tuesday through Sunday from noon or 1 p.m. until 9 p.m. When J. finished his school day, he would take the school bus to his mother's place of employment, and stay with her until R. came home, at which time defendant would pick up both boys at about 3:30 or 3:40 and stay with them at the family home, where he had his own room. When she came home, defendant would go to his room. Sometimes she would go out in the evenings, and either defendant or her mother would watch the boys. At times, defendant would volunteer to watch them; it was more common for him rather than her mother to watch them.

Sometime in 1987 or 1988, Cynthia took a different job, so that her hours of work were from 2 p.m. to 10 p.m. At this time the boys were cared for by her mother, defendant, or a friend.

Between 1986 and 1988, Cynthia noticed a change in the boys' behavior. They became more rebellious, and would assert that they did not have to listen to her and that their father would "stick up" for them. When she asked them why they were so rebellious, they would not answer.

She also observed some unusual incidents. Once, when she returned from her mother's house, she found J. in the bathroom, and he was very sweaty. She asked him a question which he would not answer, and then she suddenly noticed something move under J.'s bed, and realized it was defendant. She asked him what he was doing under the bed, and he told her it was none of her business. She asked J. if he was all right and whether anything was wrong, and he replied that he was fine, so she dropped the issue. This occurred during the daytime.

On another occasion, she went out for the evening, and discovered she had forgotten something. She went home and found that she could not unlock the door, so she kept banging and knocking on the house to be let in. Finally, the boys opened the door, and when asked why they had not opened it earlier, they claimed they had not heard her. This occurred around 9 p.m. on the weekend, at which time the boys would not normally have been asleep. Defendant was in the living room, and when she asked him why he had not let her in, he would not answer, but told her it was none of her business. The boys did not look as though they had just been awakened.

On a further occasion, she found a "dirty book" under J.'s mattress while pulling a sheet off the bed. She confronted J. with the book, asking him to whom it belonged. He would not answer, and looked scared. She then asked both boys if anyone was hurting them; she didn't know what prompted her to ask that question. R. told her that his father was touching him. She asked J., "You too?" and he said yes. She then made a report to the police on June 15, 1988, and shortly thereafter the police interviewed the boys separately.

After a week or two had passed, and defendant had not come to the house, she went to defendant's place of employment during lunchtime, and asked him to come with her. He did so unwillingly. When they arrived at the family home, they went inside, she locked the front door, and asked him whether or not he had touched the children. He said no. She then said, " 'Okay, if it's no, then let's go across the street,' because that's where the Ontario Police Department was, and I asked him, 'Let's go to the police department, and you can tell them that you did not touch my children.' And he told me no, he wasn't. And he ran out the door." Cynthia tried to physically restrain defendant from leaving while she called the police, but the police told her there was not much they could do.

About a month later, after Cynthia had discussed the matter with defendant's mother, defendant's mother arranged for defendant to come see Cynthia to talk about the matter. Cynthia and defendant took a walk, and she asked him if he touched the children. He said, "Yes, I touched [R.] But I swear to God, I did not touch [J.]." She then suggested that they go to the police and tell them, and he replied, "Why? I might as well kill myself than go to the police department." He then left with his mother.

The boys were given a medical examination by Dr. Giese, a pediatrician specializing in sexual abuse cases, about a month after mother made her police report. At trial, Dr. Giese testified that his physical findings during the examination were compatible with the history which he had been given respecting the boys being sodomized by someone who used a lubricant and who was relatively "gentle."

At trial, both boys testified that their father had committed various lewd acts on them for several years. R. testified that the molestation began when he was about seven years old and went on for two years. Defendant told him that if he told anyone, defendant would go to jail, and that defendant had asked, rhetorically, "And you don't want that, do you?" R. testified that defendant used Vaseline as a lubricant when he sodomized R. He denied being molested by his older cousin, Anthony V.

J. testified that he had been sodomized and orally copulated, and forced to perform oral copulation, by his cousin, Anthony V. Anthony was 13 or 14 at the time, and J. was 4 or 5. J. testified that on one occasion he was molested by both defendant and a "stranger" who was one of their male neighbors. According to J., this occurred after June 15, 1988, i.e., after he had told the police officer that his father had been touching him.

J. also testified that defendant, on another occasion, sodomized him with a bottle from under the sink. His testimony about this incident was indirectly corroborated by Cynthia's testimony about J.'s unusually negative reaction one time when she opened up the cupboard under the sink and he saw some small Pepsi bottles; he told her that he wanted her to throw them away, and when she asked why, he replied, "Because I hate them." According to J., he told her that "Those are bad bottles." He testified that this incident occurred before he told the police that his father was touching him.

On cross-examination, J. did not remember whether or not he had said certain things in the past to a policeman and the prosecutor. His testimony that he was tied up by the stranger was contradicted by testimony from one of the interviewing officers that J. had told the officer that he was not tied up. However, the officer's testimony confirmed other testimony by J. as to what he had told the officer, including the fact that the incident with the stranger occurred after the first police report was made.

Defendant's mother testified on his behalf to the effect that in 1989, after the initial police report had been made, that Cynthia, defendant and the boys lived together for a few months at his mother's home in Los Angeles, and that Cynthia would go off on the weekends and leave the boys with defendant. She also testified about times when, even after this attempt at living together had failed, Cynthia would let one of the boys go somewhere with defendant although Cynthia was not going to accompany them. However, on cross-examination, defendant's mother would not state that she believed Cynthia had lied when Cynthia told her that defendant had molested the boys. She was not aware of any occasion on which either boy had lied to her.

Defendant's sister and younger brother also testified about occasions occurring after the boys' initial allegations of molestation when defendant would be left with one or both boys while Cynthia was gone.

One of the officers who interviewed J. testified that he questioned the "stranger," twice, but did not arrest him; on cross-examination by the People, the officer stated he also did not arrest defendant.

Another officer testified that Cynthia told her that both boys initially "heavily" denied being molested, and that on June 11 Cynthia asked them if they were being touched but it was not until June 15 that R. admitted that he was being molested, and the molestation was by his father. The officer's report indicated that R. told the officer that the last touching of him by defendant was two days before, which would be June 13, 1988. Her report also stated that Cynthia had told her that defendant was lying on the bed with a sweaty J. rather than being under the bed. On cross-examination, the officer testified that she had no independent recollection of the specific statements made by Cynthia and the boys at the time of her interview. She had not taken notes or recorded her conversation with them at the time of the interview, but instead prepared her report later the same day by dictating it, and she may have made some mistakes on it. On redirect examination, the officer further testified that J. never told her about specific times on which the acts of molestation occurred.

Another officer testified about his interview of J. J.'s statements in this interview about the incident with the stranger conflicted with his testimony at trial. On redirect examination, the officer testified that Cynthia told him that J. disclosed the information about the stranger after revealing the information about his father, and J. expressed a concern about her calling the police because the stranger would kill him.

Defendant also presented testimony from an expert witness about the importance of considering how many times and by whom a child has been interviewed about a molestation. He expressed concern about "contamination" of the child's testimony by certain interview techniques.

In closing argument, defendant's attorney emphasized the issue of coaching and leading questions as having contaminated the boys' reports to their mother and the police and their testimony at trial. The jury was instructed that it must unanimously agree on the commission of a specific act in order to find defendant guilty.

The jury deadlocked on count 1, as to J., but found defendant guilty on count 2 as to R. The court declared a mistrial as to count 1.

## III.

### DISCUSSION

A. *The Trial Court Did Not Err by Refusing to Allow Defendant to Cross-examine One of the Minor Witnesses About Statements Purportedly Made by the Minor Witness During a Pretrial "Settlement Meeting," Which Purportedly Were Inconsistent With Statements Made by the Minor Witness at Trial*

 Defendant contends that the trial court committed reversible error by failing to allow him to cross-examine R. at trial with statements R. supposedly made at an April 3, 1991, meeting at which the prosecutor and defense attorney were present, and which statements reputedly were inconsistent with R.'s testimony at trial.

At trial, when defendant's attorney decided to try to impeach R. by asking him about statements he purportedly made at the April 3 meeting, she requested a conference between the attorneys and the trial court to discuss her plan, which included having the prosecuting attorney stipulate that R. had made certain statements at the meeting which were inconsistent with his trial testimony. The prosecutor not only would not so stipulate, but pointed out that the April 3, 1991, meeting, which was attended only by defendant's attorney, the prosecuting attorney, and the two boys, had been for "settlement purposes" only, and that defendant's attorney had agreed that any statements by the boys, including R., at the meeting would not be used for impeachment purposes.

The details surrounding the meeting were as follows. Defendant's attorney had sought to interview the boys before trial, but Cynthia, the boys' mother, refused to allow them to be interviewed. The prosecuting attorney persuaded Cynthia to allow defendant's attorney to meet with the boys and with the prosecuting attorney for the purpose of demonstrating to defendant's attorney that the boys were credible witnesses, in the hope that defendant's attorney would then discuss this with defendant, who might agree to a plea bargain rather than going to trial and forcing the boys to testify against him and in so doing discuss the details of the abuse they had experienced.

Defendant's attorney, who apparently conceded that she had no way to force the boys to submit to an interview on her terms, agreed to the conditions attached to this meeting by the prosecuting attorney, which were that the meeting would not be transcribed, that no other persons, such as defendant's investigator, would be present, and that the interview could not

be used for purposes of impeachment, but was only for the purpose of allowing defense counsel to get a "feel" for the boys so that she could discuss a nontrial disposition with defendant. Defendant's attorney did not dispute the above-characterization of her agreement, but contended that she had been forced to agree to the prosecuting attorney's terms to be able to have access to the boys, and that refusing to allow her to use the statements R. made at the meeting deprived defendant of his constitutional right to impeach R.'s credibility.

 As the People acknowledge, a defendant's right to confront witnesses and to cross-examine them is guaranteed by both the California and the United States Constitutions. (U.S. Const., Amend. VI; Cal. Const., art. I, § 15.) However, although a complete waiver of the right to confront witnesses cannot be made by counsel alone in circumstances which override the defendant's basic plea of not guilty (*Brookhart* v. *Janis* (1966) 384 U.S. 1, 7-8 [16 L.Ed.2d 314, 318-319, 86 S.Ct. 1245, 1248-1249]; see *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]), the decision of whether to cross-examine a specific witness is "clearly one for counsel alone." (*Brookhart* v. *Janis, supra,* 384 U.S. 1, 8 [16 L.Ed.2d 314, 319, 86 S.Ct. 1245, 1249] (Separate opn. by Harlan, J.).) For example, the right to confrontation may "be waived *in part by counsel without the consent of the accused,* as when counsel makes a 'tactical decision' not to cross-examine a particular witness or not to place the accused on the stand." (*In re Mosley* (1970) 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473], italics in original.) Such a decision is binding on defendant. (*People* v. *Modesto* (1967) 66 Cal.2d 695, 715-716, fn. 17 [59 Cal.Rptr. 124, 427 P.2d 788], overruled on another ground, *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383, fn. 8 [66 Cal.Rptr. 724, 438 P.2d 372].)

Here, as defense counsel herself essentially admitted, she agreed to give up the possibility of using any statements made by the boys at the April 3 meeting as the basis for impeaching them at trial in exchange for the opportunity personally to interview the boys and assess them as witnesses. This was, in essence, a partial waiver of defendant's right to confront and cross-examine the boys as witnesses at trial, and one which was clearly based on the tactical consideration that in exchange, she would be able to interview and assess these two most important witnesses, who were otherwise unavailable to her before trial.

Defendant's argument that the agreement between his attorney and the prosecutor about the limited purpose of the meeting and the restriction on any use of the boys' statements at the meeting must yield to his constitutionally guaranteed rights misses the point, which is that the agreement constituted a partial waiver of his constitutional right to confrontation. He contends that this right is a "trial" right, and that therefore he could not have

waived it before commencement of trial. However, the authorities cited for this proposition, *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39, 52 [94 L.Ed.2d 40, 54, 107 S.Ct. 989, 998-999] and *Barber* v. *Page* (1968) 390 U.S. 719, 725 [20 L.Ed.2d 255, 260, 88 S.Ct. 1318, 1322], while they do refer to the right to confront and cross-examine witnesses as a "trial" right, in no way hold that a right which may be claimed at trial may not be waived, in whole or in part, before the trial. Basic case law demonstrates that pretrial waivers of constitutional rights exercisable at trial are routinely made and upheld on appeal; the very right to a trial may be waived before the trial takes place.

Defendant's final contention, that by "enforcing" the agreement, the trial court allowed the prosecution to control the proceedings in a manner which violated due process, is equally without merit. Initially, the trial court's ruling to preclude as evidence R.'s statements at the April 3 meeting was not an act of "enforcing" an agreement between the prosecution and defense. Its decision was based on the existence of a partial waiver, which was part of the agreement. Secondly, the prosecution did not control defendant's case; defendant's attorney made a valid tactical decision which included a limited waiver of the right to cross-examine two witnesses and defendant was bound by it.

B. *Defendant's Trial Counsel Was Not Inadequate Because She Did Not Move to Exclude Hearsay Evidence Corroborating One of the Minor Witnesses' Testimony That He Had Been Sexually Molested by Defendant*

▮ Defendant contends that his trial attorney did not provide adequate representation because she failed to move to exclude hearsay evidence which "corroborated" R.'s trial testimony that he had been sexually molested by defendant.

At trial, Cynthia, R.'s mother and defendant's wife at the time of the molestations, testified that on June 15, 1988, she found a pornographic magazine under J.'s bed. She testified that she then asked both R. and J. whether anyone had been touching them. According to Cynthia, R. told her that defendant had touched him, and she then called the police.

Defendant contends that the contents of this conversation were inadmissible, because it was hearsay, and did not come within the definition of a "fresh complaint" so as to constitute an exception to the hearsay rule.[2] He contends that the admission of R.'s statement was highly prejudicial and

---

[2]We do not understand the "fresh complaint" doctrine to constitute an exception to the hearsay rule because evidence offered under this rubric is not for the truth of the matter stated in the complaint but merely to establish that a complaint was made. Many times it is offered

there is no satisfactory tactical or strategic explanation for his attorney's failure to object. Therefore, reversal is required.

◼️ As the People point out, however, "When a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation. *If the record sheds no light on why counsel acted or failed to act in the manner challenged, unless counsel was asked for an explanation and failed to provide one or unless there could be no satisfactory explanation, the case is to be affirmed on appeal.* (*People* v. *Pope* [1979] 23 Cal.3d [412] at pp. 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) In such cases, the claim is more appropriately made in a petition for habeas corpus. (*Ibid.*)" (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1251 [255 Cal.Rptr. 569, 767 P.2d 1047], italics added; see also *People* v. *Wright* (1990) 52 Cal.3d 367, 404-405 [276 Cal.Rptr. 731, 802 P.2d 221].)

◼️ Here, defendant's attorney was aware that mother's testimony about what the boys told her presented "a problem." The court stated that mother's testimony could be used to tie the children's statements to her to a time frame, but that as to the admissibility of the statements themselves, they would have to wait until after the children testified, and the People agreed that they were not planning to bring in hearsay "at this point."

However, during the direct examination of Cynthia, the prosecutor asked her what she had asked J. when she found the magazine. Defendant's attorney objected on the ground of hearsay. Her objection was overruled. The prosecutor then asked Cynthia what J. had answered. Defendant's attorney then again objected, and her objection was overruled. Cynthia replied that J. did not say anything, and that she thought he was scared. Defendant's attorney again objected, but then withdrew her objection, saying, "Aw, forget it." She thereafter did not object when the prosecutor next asked Cynthia about how she had asked the children if someone was hurting them, and what their responses were.

The People persuasively argue that defendant's attorney's decision to forego further objections to Cynthia's testimony about her questioning of the boys and their answers can be satisfactorily explained as a tactical decision, given the fact that defendant's primary defense was built around the theory that Cynthia was angry with defendant, that she planted in the boys' heads

---

to support the credibility of the victim's trial testimony. (*In re Cheryl* (1984) 153 Cal. App.3d 1098, 1128-1129 [200 Cal.Rptr. 789].) For the purposes of our analysis of the ineffectiveness of counsel contention, whether R.'s response to Cynthia's question was hearsay or for nonhearsay purposes is not significant.

the idea that defendant was the molester, that when questioned by the police, the boys initially denied being molested by anyone, but finally stated that defendant had molested them, and that experts in the field of child molestation believe that a child's credibility must be considered in light of whether the child made a spontaneous verbal report, or whether the child was contaminated by leading questions. Defendant's attorney vigorously argued this defense position during closing argument.

Furthermore, even if defendant's attorney's failure to object to that portion of Cynthia's testimony regarding R.'s initial statements that defendant had molested him could not be satisfactorily explained as a trial tactic, defendant has failed to show how he was prejudiced by the admission of this evidence. Cynthia testified only that R. said he had been "touched" by defendant, and she did not testify that he claimed to have been touched in particular ways which would support the charged offense. This testimony pales in importance when weighed against R.'s own testimony at trial which detailed the specific acts of molestation.

 Additionally, the importance of Cynthia's unobjected-to testimony as "corroboration"[3] of R.'s assertion that he had been molested is also minimized by the fact that there was other independent admissible evidence which tended to corroborate R.'s testimony as to defendant molesting him: first, J.'s testimony that defendant had molested him, and the nature of the acts of molestation he described, was corroboration of R.'s claims (see, e.g., *People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1110 [220 Cal.Rptr. 339], declined to follow on another ground, *People* v. *Jones* (1990) 51 Cal.3d 294, 307 [270 Cal.Rptr. 611, 792 P.2d 643], holding that one sibling's testimony about sexual acts committed against her were relevant and material on issue of whether defendant, who resided with both siblings, had a "continuing plan or design" " 'to use minor female members of his own household . . . to satisfy his sexual gratifications and wants. [Citations.]' "), as was Cynthia's testimony concerning finding a sweaty J. near the bed, defendant hiding under the bed, and defendant's reply to her query about what he was doing there that it was none of her business, the incident in which Cynthia returned to find that she had been locked out of the house (in which the boys and defendant were located); defendant's failure to let her into the house when she was banging on the door, and his reply, to her query why he had not opened the door, that it was none of her business; and most importantly, defendant's admission to Cynthia that he had molested R., but that he swore to God he had not touched J.

---

[3]We note that a child's testimony regarding being molested need not be corroborated in order to support a conviction for violating Penal Code section 288. (*People* v. *Harlan* (1990) 222 Cal.App.3d 439, 451-454 [271 Cal.Rptr. 653].)

We conclude the record reveals a clear tactical reason for defendant's attorney not objecting to the admission of R.'s response to Cynthia's question whether anyone had touched him. Consequently, her representation of defendant was not ineffective. Further, if we assumed such ineffectiveness, defendant has not shown in light of the other admissible evidence that if R.'s statement to his mother had been excluded, there is a reasonable probability that the jury would have acquitted him.

C. *Defendant's Trial Counsel Did Not Act Ineffectively by Failing to Remove Defendant's Intent as an Issue, so as to Prevent Admission of Evidence of Uncharged Earlier Sex Offenses Against R.*

■ Defendant contends, in his opening brief, that his trial attorney inadequately represented him because she failed to remove intent as an ultimate issue, so as to preclude admission of evidence of uncharged prior acts of his lewd conduct with R., thus allowing the jury to see him depicted as a habitual molester, which in turn was highly prejudicial to him.

The People first responded to this contention by pointing out that the record on appeal, which did not contain a transcript of the hearing on certain pretrial motions heard April 17, 1991, did not conclusively demonstrate that defendant's trial counsel did not object to the admission of such other uncharged offenses. The People then, after assuming for the sake of argument that the record supported defendant's initial claim that his attorney made no effort to prevent the admission of these uncharged offenses, pointed out several other reasons we should reject defendant's claim of error.

Defendant, at the same time he filed his reply brief, moved to augment the record to reflect what occurred at the April 17 hearing. The motion was granted and we have reviewed the transcript.

The transcript shows that defendant's attorney did, in fact, request that the court order the People to elect the specific incident of lewd conduct with which defendant was charged. In response to this request, the People pointed out that under current law, e.g., *People* v. *Jones, supra,* 51 Cal.3d 294, 305-312, 316, 321-322, they were not required to elect a specific date on which the charged incident occurred, but could instead allege a time period, as to which period the complaining witnesses could testify about repeated acts of lewd conduct. The People pointed out that "the boys are not going to be able to be specific, but they will be able to link approximate dates and approximate times." The court noted that there was a one-year time period as to J. and a one-month time period as to R. It then reviewed the applicable jury instructions (CALJIC Nos. 17.01, 4.71, 4.71.5, 4.72), and concluded

that although the People were not required to elect a particular act committed on a particular date, and to restrict the boys' testimony accordingly, nonetheless the jury should be advised that they would be hearing evidence of a series of claimed events, and that this was not offered to prejudice them against the defendant, but that such testimony was permitted in this type of case, and that to find defendant guilty they would have to unanimously agree that he had committed the same specific act or acts within the time period alleged.

It is apparent that if defendant's attorney, in an attempt to preclude admission of other uncharged prior sexual offenses, had indicated to the court that defendant's intent was not a disputed issue (see *People* v. *Perkins* (1984) 159 Cal.App.3d 646, 651-652 [205 Cal.Rptr. 625]), such an attempt would have been ineffectual, because evidence of other sexual acts committed during the time period in question would have been admissible because of the nature of the crime, i.e., it involved a "resident child molester." (See, e.g., *People* v. *Jones, supra,* 51 Cal.3d 294, 305-312, 316, 321-322; *People* v. *Moore* (1989) 211 Cal.App.3d 1400, 1412 [240 Cal.Rptr. 134] [defendant was charged with one act of rape between June 1 to Aug. 31, 1985]; *People* v. *Moreno* (1989) 211 Cal.App.3d 776, 789-792 [259 Cal.Rptr. 800].)

It is true that at trial the People elicited testimony from R. concerning sexual offenses by defendant against him, which occurred *before* the one-month time period alleged in the amended information. Presumably, defendant's reference to his trial attorney's failure to remove intent as an issue so as to avoid admission of uncharged "earlier" offenses is a reference to this testimony. However, there is no indication that defendant's attorney knew, or could have anticipated, that the People would elicit such testimony at trial, and therefore there was no reason for her to remove the issue of defendant's intent so as to avoid the introduction of evidence which she had no reason to expect would be presented.

Defendant does not contend that his trial counsel was ineffective because she failed to object to R.'s testimony concerning uncharged earlier sexual acts once such testimony had been elicited. ■ Presumably, this is because evidence of uncharged prior offenses is admissible to show defendant's lewd disposition or lewd intent toward the prosecuting witness, i.e., R. (*People* v. *Sylvia* (1960) 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Brunson* (1986) 177 Cal.App.3d 1062, 1068-1069 [223

Cal.Rptr. 439]; *People* v. *Moon* (1985) 165 Cal.App.3d 1074, 1078 [212 Cal.Rptr. 101].)[4]

■ However, defendant does contend that the requirements for the admission of uncharged prior lewd acts involving R. were not met in this case, because there must be corroboration of the past uncharged offenses committed against R. before evidence of such offenses may be admitted, and because Cynthia's testimony tended to corroborate the prior molestation of J., but not of R.

It has been held that evidence of uncharged prior sexual offenses committed against the prosecuting witness is not admissible to show lewd intent toward the prosecuting witness when the only prosecution evidence as to the other offenses, as well as of the *charged* offenses, is the uncorroborated testimony of the prosecuting witness; "Under those circumstances, the basic issue is the veracity of the witness and the defendant, and the trier of fact is not aided by the uncorroborated testimony of the prosecuting witness as to the prior offenses. [Citation.]" (*People* v. *Moon, supra,* 165 Cal.App.3d 1074, 1079, citing *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 574 [199 Cal.Rptr. 796].)

Defendant takes the position that this means that there must be separate corroborating evidence for the uncharged offenses as well as for the charged offense. The language in *Moon* on this point is somewhat ambiguous, so a review of the cases on which *Moon*'s holding is based is necessary in any analysis of whether there must be corroboration of each uncharged offense before such evidence is admissible.

The court in *Dunnahoo,* on which *Moon* relied, held that "An exception to the admissibility of other crimes evidence [to show lewd disposition toward a particular witness] is where the evidence is limited to the uncorroborated testimony of the prosecuting witness. (*People* v. *Stanley* [(1967)] 67 Cal.2d 812, 817 [63 Cal.Rptr. 825, 433 P.2d 913].)" (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d 561, 574.) In *People* v. *Stanley* (1967) 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913] on which *Dunnahoo* relied, the case was one in which "the only prosecution evidence of the other offenses as well as the only prosecution evidence as to the charged offenses [was] the testimony of the complaining witness." (*Id.* at p. 817.) In other words, there was no

---

[4]Defendant does not *explicitly* contend that his trial counsel's failure to move to strike evidence of uncharged prior offenses, on the ground of lack of corroboration, was an aspect or outgrowth of her ineffectiveness in not removing defendant's intent as an issue. But, given his comments in that portion of his brief regarding such ineffective assistance, he appears to implicitly argue that such evidence was inadmissible and that counsel's failure to object *or* move to strike was ineffective assistance.

corroboration of the charged offense, either. The *Stanley* court held that there should not be hard and fast rules for the admission of evidence of other crimes, but that a trial court should not admit such evidence unless it is shown to be relevant, material, and not merely cumulative. (*Id.* at pp. 818-819.) It then concluded that the admission of other crimes evidence in the case before it "added nothing to the prosecution's case," given that the complaining witness's uncorroborated testimony of prior acts of molestation against him in no way strengthened his testimony, which was also uncorroborated, as to the offenses charged. (*Id.* at p. 819.)

Based on the foregoing history of the holding in *Moon*, we conclude, in cases in which uncharged prior sexual offenses are offered to show the defendant's lewd disposition toward the prosecuting witness, that when the evidence of the *charged* offense consists of the prosecuting witness's testimony *plus* some corroborating evidence, there need not be separate corroborating evidence for each uncharged sexual offense committed against the prosecuting witness before that witness's testimony may be admitted as to such uncharged offense or offenses, so long as the evidence of uncharged offenses "adds something to the prosecution's case," i.e., it is relevant, material, and noncumulative.

In this case, R.'s testimony as to the charged act was corroborated by Cynthia's testimony about defendant's admission that he had not "touched" J. but that he had "touched" R. R's testimony as to the uncharged offenses against him clearly was relevant, material and noncumulative, because on the issue of intent it showed defendant's sexual interest in and disposition toward R., and provided a possible explanation for R.'s reluctance to disclose the fact of molestation (given defendant's comments to R. after such other offenses that if R. told anyone about the molestations, defendant could go to jail). Such evidence also explained the possible cause of defendant's behavior on the occasion when Cynthia was locked out of the house, and defendant refused to explain why he had not let her in, despite her pounding on the door.

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 31, 1992. Mosk, J., was of the opinion that the petition should be granted.