[No. B033274. Second Dist., Div. Seven. Nov. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEROY WINKLE, Defendant and Appellant.

**COUNSEL**

John D. O'Loughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Keith H. Borjon, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**WOODS (N. F.), J.**—This appeal is from a judgment entered pursuant to a jury verdict. A jury convicted appellant of committing a lewd act upon a child on and between March 1, 1983, and May 31, 1983, in violation of Penal Code[1] section 288, subdivision (a), a serious offense within the meaning of section 1192.7, subdivision (c)(6). The jury also found that in the commission of the offense, appellant engaged in substantial sexual conduct, i.e., penetration of the vagina of the victim by appellant's penis, with the victim being a child under the age of 11 years, within the meaning of section 1203.066, subdivision (a)(8), and that appellant occupied a position of special trust with the victim within the meaning of section 1203.066, subdivision (a)(9). We affirm.

### Factual and Procedural Background

Dawn C., the victim, was born on June 26, 1977. In 1983, Dawn lived with her mother, Brenda H., and her two brothers in the front part of a duplex. Appellant, Dawn's uncle, lived in the back of the duplex with his wife and children. Appellant's wife and Dawn's mother are sisters. At the time of the trial, appellant was in the process of dissolving his marriage.

In March 1983, Mrs. H. was having trouble with her older son. After one incident, appellant called the police on Mrs. H. Consequently, the juvenile court placed Dawn, then age five, and her two brothers in the care of appellant. The children remained in appellant's care until approximately June 10, 1983.

Dawn, who was 10 at the time of trial, testified that during the time she lived with appellant, he put his penis inside her vagina more than once a week. The attacks occurred when Dawn and her uncle were home alone, "sometimes in the bathroom and sometimes in the bedroom."

Dawn also testified that similar acts occurred in the bathroom at appellant's place of work and that even though there were other people at appellant's work, they were sometimes gone. Dawn thought that the act happened twice at appellant's work. Other than being asked if she saw anyone at appellant's work, Dawn was not cross-examined about the acts which took place there.

Although Mrs. H., Dawn's mother, noticed a behavioral change in Dawn after Dawn was released back to her mother's custody, it was not until May

---

[1] All statutory references are to the Penal Code unless otherwise noted.

of 1986, almost three years later, that Mrs. H. learned of the attacks and contacted the police.

Detective Lardie of the Glendale Police Department testified that after appellant was arrested, appellant was advised of his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) and signed a *Miranda* waiver. After appellant waived his *Miranda* rights, he initially denied that he had molested his niece. After being read a police report which contained a statement from Dawn, appellant then stated that "he had not actually penetrated her vagina, but he had only rubbed his penis against her vagina."[2]

Appellant recanted that statement at trial, claiming that the male officer who interviewed him told him that he would not get out of jail unless he told them what they wanted to hear. In rebuttal, Officer Insalaco, the male officer who interviewed appellant, testified that he did not threaten appellant nor tell appellant that he would not be allowed out of jail if he did not speak with the police.

In May 1987, Dawn was examined by Doctor Stanincova. Dr. Stanincova testified that she found medical evidence which substantiated Dawn's statements.

At trial, appellant, who was the sole defense witness, testified that he never molested Dawn. Appellant testified that there was always someone around at his work. Appellant thought that Dawn made up the charges because she was mad at him for having the authorities take her away from her mother. Appellant also thought that the charges were part of a revenge plot on the part of Dawn, her mother and his former wife.

Appellant filed a timely notice of appeal.

### APPELLANT'S CONTENTION

Appellant contends that the trial court erred in failing to instruct[3] the jury that it must unanimously agree on the underlying act forming the basis of a finding of guilty.

---

[2] Pursuant to Evidence Code section 402, a hearing was held outside the presence of the jury on appellant's motion to suppress his statements to the police. The court found that the statements were admissible.

[3] In his reply brief, appellant concedes that no due process issue is raised pertaining to the notice of the charge against him.

## DISCUSSION

█ Appellant contends that the trial court should have given the jury a unanimity instruction.[4] █ The purpose behind a unanimity instruction is that: "when the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Fn. omitted.]" (Original italics.) (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 853 [212 Cal.Rptr. 174].)

The Supreme Court noted that there is a "continuous conduct exception" to the need for a unanimity instruction. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971].) In *Diedrich,* a former county supervisor was charged with two counts of bribery. In the first count, one act of bribery was charged, yet the evidence introduced at trial dealt with two distinct acts—a developer's rejection of the supervisor's offer to sell land at an inflated price (which would help the developer get the land out of the agricultural preserve) and the supervisor's suggestion that the developer hire the supervisor's personal attorney to channel funds to the supervisor. (*Id.,* at p. 280.)

The continuous conduct exception occurs in two circumstances—when the two offenses are so closely connected in time that they form part of one transaction or when the offense consists of a continuous course of conduct. (31 Cal.3d at p. 282.) However, in holding that the refusal to give a unanimity instruction was prejudicial error in *Diedrich,* the Supreme Court went on to state that "[t]his is not a case where the jury's verdict implies that it did not believe the only defense offered." (*Id.,* at p. 283.) The Supreme Court did not state whether, in such a case, the failure to give a unanimity instruction would not constitute an error or would be a harmless error.

Some appellate decisions have used the latter statement in *Diedrich* to find another exception to the need for a unanimity instruction, concluding that a unanimity instruction is unnecessary when the jury's verdict implies that it did not believe the only defense offered.

In *People* v. *Gonzalez,* the victim testified to two incidents of vaginal penetration in support of a rape charge. Since the two incidents occurred at

---

[4] Although not expressly stated, we infer that appellant is referring to CALJIC No. 17.01 (4th ed. 1979) which provides that: "The defendant is charged with the offense of _____ . He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

the same place within minutes of each other, the court reasoned that: "Therefore, the jury could only accept or reject the defense in toto; in either case, they were compelled to reach a unanimous verdict. Accordingly, we find that the unanimity instruction was unnecessary." (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 792 [190 Cal.Rptr. 554], disapproved on another point in *People* v. *Kurtzman* (1988) 46 Cal.3d 322, 330 [250 Cal.Rptr. 244, 758 P.2d 572].)

In January 1988, two Court of Appeal decisions came to opposite conclusions about the need to give CALJIC 17.01 in situations involving lewd and lascivious acts with a child under 14 years of age, the violation charged in the instant case. *People* v. *Martinez* (1988) 197 Cal.App.3d 767 [243 Cal.Rptr. 66] involved 20 counts of lewd and lascivious acts and testimony which suggested in excess of 200 separate, varying acts of molestation over 32 months. (*Id.,* at pp. 771-772.) Although mindful of the severe problems confronting prosecutors when young victims were involved, the court concluded that the problems were not a sufficient justification for not giving the unanimity instruction and held that it was prejudicial error to have failed to do so. (*Id.* at p. 775.) We note that there was a strongly worded dissent in *Martinez.*

*People* v. *Meyer* (1988) 197 Cal.App.3d 1307 [243 Cal.Rptr. 533] involved one charged act and testimony about two separate occasions, a couple of weeks apart, during which the defendant was alleged to have committed the same type of act. The court reasoned that a unanimity instruction was unnecessary unless there was evidence based upon which reasonable jurors could disagree as to which act the defendant committed. The court concluded that since the evidence consisted of the victim's testimony, and her statements were the same concerning the two acts, "no evidence was presented that would have caused disagreement among the jurors as to which act the defendant had committed." (*Id.,* at p. 1312.)

In *People* v. *Dunnahoo,* the court held that the prosecutor did not have to elect the particular sex acts relied on as proof of the charged offenses. (*People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 572-573 [199 Cal.Rptr. 796].) The *Dunnahoo* court reasoned that since the victims were only five years old at the time they were molested, "they did not have the ability to pinpoint the exact dates of the many weird sexual happenings, a recall feat not to be expected even of older victims." (*Id.,* at p. 572.)

The *Dunnahoo* court further reasoned that: "Forcing the prosecution to an election in fact situations such as the not untypical one before us may create an anomalous result: the prosecution may feel bound to charge dozens of acts, and if a defendant is convicted, such convictions could result in extremely long sentences. Or, we may find that only those defendants who

select more mature victims with better memories will be subject to prosecution, or only the *one time* offenders." (Original italics.) (152 Cal.App.3d at p. 573.) ██ We are likewise concerned that giving a unanimity instruction could lead to analogous problems of proof when a young child is the victim of frequent acts of molestation.

We are mindful that the courts have applied varying standards of review to the failure to give a unanimity instruction. (See cases collected in *People v. Schultz* (1987) 192 Cal.App.3d 535, 539-540 [237 Cal.Rptr. 513].) We conclude that in the instant case, because the victim was of a tender age at the time of the acts of molestation and because she testified about repeated incidents of the same act of sexual molestation, a unanimity instruction was unnecessary.

Unlike *Diedrich,* the instant case does not involve testimony about two distinct acts nor does it involve testimony about a variety of acts as in *Martinez.* In the instant case, the victim, Dawn, was just under six at the time appellant, her uncle, molested her and ten at the time of the trial. Dawn testified that during the time (approximately three months) she lived with appellant, he put his penis inside her vagina more than once a week. The attacks occurred when Dawn and her uncle were home alone, "sometimes in the bathroom and sometimes in the bedroom."

Dawn also testified that she thought that two similar acts occurred in the bathroom at appellant's place of work and that even though there were other people at appellant's work, they were sometimes gone.

Dawn's testimony was corroborated by testimony from Doctor Stanincova, who examined Dawn in May of 1987, and found medical evidence which substantiated Dawn's statements.

Appellant testified that he did not molest Dawn and that he thought that she made up the charges because she was mad at him for having reported her mother to the police which led to Dawn's being placed in appellant's custody. Appellant felt that the charges were part of a revenge plot against him by Dawn, her mother, and his former wife (the sister of Dawn's mother). Appellant, who was the sole defense witness, testified that there was always someone about at his work.

Based on the facts, this case can be distinguished from those cases in which a victim testified about specific acts of molestation under one count, and in which the appellate court determined that it was error not to give a unanimity instruction. In *People v. Gordon,* a child testified to an attempted act of sodomy for which no date was given and to a second act which occurred during a camping trip, the court determined that the failure to give a unanimity instruction was an error. (*People v. Gordon, supra,* 165

Cal.App.3d 839.) In *Gordon,* a witness, who had accompanied the victim and the defendant on the camping trip, in essence testified that the defendant did not have the opportunity to be alone with the victim. (*Id.,* at p. 848.)

The *Gordon* court reasoned that "[b]ecause some of the jurors may have believed the lack of opportunity defense to the second act, and other jurors not, and because some jurors may have believed there was penetration with respect to the first act of sodomy but not the second, and others not, we must conclude, there being *more than one* defense offered, that the jury verdict does not establish beyond a reasonable doubt that the jury rejected the same or only defense offered." (*Id.,* p. 856.)

*People* v. *Deletto* (1983) 147 Cal.App.3d 458 [195 Cal.Rptr. 233] supports our conclusion that the unanimity instruction was not necessary in this case although appellant offered more than one defense. In *Deletto,* the victim, the defendant's six-year-old daughter, testified to two separate acts of oral copulation, although only one count of such offense was charged. The defendant had three defenses—he did not do anything, the victim had lied, and someone else committed the molestation. (*Id.,* at pp. 467-468.)

The *Deletto* court reasoned that: "This is not a case in which different witnesses testified as to one incident but not the other or where different items of real evidence were introduced to prove one act but not the other, so that the jury might have distinguished between the credibility of different witnesses or the weight to be given various items of real evidence. (147 Cal.App.3d at p. 466.) The court concluded that "neither defense evidence nor defense argument suggested even remotely to the jury that they could somehow distinguish between the two acts of oral copulation testified to by the minor." (*Id.,* at p. 468.)

Whether or not the jury accepted appellant's defense in this case comes down to a question of credibility—whether the jury believed Dawn or appellant. Appellant offered no alibi or identity defense. Different items of real evidence were not introduced regarding the different acts. Although appellant's attorney argued in closing that Dawn would have attracted attention at work so that someone would not take her to work if he wanted to molest her, appellant had no corroborating evidence, such as a witness from his work, that it would have been difficult for appellant to have been alone with Dawn in the bathroom at work. Appellant did not even testify that it would have been difficult to be alone with Dawn in the bathroom at work. Accordingly, appellant's only real defense was his credibility.

Dawn did not testify about any specific dates, but rather a series of occurrences at home and at appellant's place of work. Dawn's testimony was corroborated by Dr. Stanincova's testimony that she found medical

evidence which substantiated Dawn's statements. Based on appellant's incriminating statement to the police that "he had not actually penetrated her vagina, but he had only rubbed his penis against her vagina," it is highly improbable that his subsequent trial testimony would have been believed by the jury. The fact that three years elapsed before the incidents were reported to the police certainly would have attenuated the revenge defense offered by appellant.

We conclude that the jury must have believed Dawn in order to have found appellant guilty of the substantial sexual conduct allegation in the information. Since at trial no attempt was made to distinguish the acts which occurred at appellant's home from those which occurred at appellant's place of work by either introducing corroborating testimony or by even cross-examining Dawn, the jury had no basis on which to distinguish between the acts about which Dawn testified.

■ In a situation in which a very young child testifies about a series of similar molestations without identifying any specific dates, the unanimity instruction should not be given as it would be confusing for the jury to be given an instruction requiring them to agree on a specific act, when there is no specific act for them to agree upon. (See *People* v. *Schultz, supra,* 192 Cal.App.3d 535, 539.) ■ Here, the jury's verdict indicates that the jurors believed Dawn, not appellant.

Even if a unanimity instruction should have been given, using the same analysis discussed earlier, any error in not giving the instruction was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.