KELLUM, Judge.
The State of Alabama appeals the circuit court's order granting Frank M. Kerley's Rule 32, Ala. R. Crim. P., petition for postconviction relief on one of the claims in Kerley's petition. Kerley cross-appeals the circuit court's denial of the other two claims raised in his petition.
Facts and Procedural History
In 2014, Kerley was convicted of one count of first-degree sexual abuse of M.L. and one count of first-degree sexual abuse of J.H. See § 13A-6-66(a)(1), Ala. Code 1975. The trial court sentenced Kerley to five years' imprisonment for each conviction. This Court affirmed Kerley's convictions and sentences on direct appeal in an unpublished memorandum issued on April 10, 2015. Kerley v. State (No. CR-13-1628), 213 So.3d 611 (Ala. Crim. App. 2015) (table).
*895 This Court issued a certificate of judgment on September 18, 2015.
In our unpublished memorandum affirming Kerley's convictions and sentences,[1] this Court set out the evidence presented at trial by the State:
"The record indicates the following pertinent facts. Kerley was married to E.K., the mother of J.H. and M.L., and lived with E.K., J.H., and M.L. in Jefferson County. E.K. was a nurse and worked the night shift in a hospital on weekends. While E.K. worked, Kerley would keep M.L. and J.H. at home.
"M.L. testified that on her ninth birthday-January 2, 2002-the first incident of sexual abuse by Kerley occurred. M.L. and Kerley were lying on the sofa watching television together when Kerley began to 'rub ... his penis against [her] butt.' (R. 43.) M.L. indicated that they were both clothed and that Kerley told her that 'this is what dads and daughters did on their ninth birthday.' (R. 44.) E.K. was at work and Kerley and M.L. were alone in the house at the time this incident occurred.
"M.L. testified that, on multiple occasions, Kerley would enter her bedroom to read her a bedtime story. Inside the bedroom, Kerley would 'grind his penis on [M.L.'s] vagina area.' (R. 45.) At first, Kerley touched M.L. while she wore clothes but the abuse progressed to the point where M.L. was unclothed. Kerley told M.L. that it was 'really hot' in the room and told M.L. to undress, making 'it seem like it was part of the bedtime story.' (R. 45.) Kerley used his hands to touch M.L.'s breasts and vagina. Kerley also penetrated M.L.'s vagina with his fingers.
"M.L. testified that Kerley had his clothes on when these incidents first began; however, as the abuse progressed, Kerley would sometimes not wear any pants or underwear. Kerley would tell M.L. to hold his penis. M.L. testified that she did as Kerley asked because she did not know what else to do. M.L. indicated that these incidents continued until she was 12 years old. M.L. did not tell anyone about the abuse because Kerley threatened to kill M.L.'s family if she ever disclosed the abuse.
"J.H. was 8 years old and had her own bedroom down the hall from M.L. when Kerley began abusing J.H. J.H. testified that she would be asleep in her room and would be awakened by Kerley touching her breasts and vagina with his fingers; the touching occurred both over and underneath J.H.'s clothing. After Kerley touched J.H., he would tell her that she 'was loved.' (R. 86.) J.H. testified that Kerley would touch her a couple of times each month. These incidents ended when J.H. was either 12 or 13 years old and moved in with her father to escape Kerley's abuse. When J.H. moved, she wrote E.K. a letter and explained that she no longer wanted to live with E.K. anymore. J.H. did not tell anyone about the abuse because Kerley said that E.K. would be angry at her. M.L. and J.H. eventually confided the abuse to each other and the two contacted the police."
Although Kerley did not testify on his own behalf at trial, he called two witnesses in his defense, and, through their testimony as well as through cross-examination and argument, Kerley denied the sexual-abuse allegations, asserted that M.L. and J.H. had made up the allegations against him at the urging of their mother, who was fighting Kerley for custody of M.L.'s and J.H.'s *896 half sister at the time M.L. and J.H. had made the allegations against him in September 2010, and attacked M.L.'s and J.H.'s credibility, including presenting evidence impeaching portions of M.L.'s and J.H.'s testimony. For example, Kerley presented evidence indicating that the layout of the house that he shared with E.K., M.L., and J.H., was not as M.L. had testified; that he and M.L. were not alone in the house on her ninth birthday, as M.L. had testified; and that M.L. and J.H. had lived with their father for several months in the summer of 2003, contrary to their testimony that they had spent only two weeks with their father that year.
On September 19, 2016, Kerley, through counsel, timely filed the instant Rule 32 petition.[2] He filed an amendment on December 21, 2016, and a second amendment on March 24, 2017.[3] In his petition and amendments, Kerley alleged that his trial counsel was ineffective for allegedly: (1) not requesting a unanimity instruction; (2) not calling his brother to testify and not eliciting testimony from his sister that M.L. had recanted her allegations of sexual abuse; and (3) not calling to testify Kerley's adult daughter to refute M.L.'s testimony that she was abused on her ninth birthday. On January 13, 2017, the State filed a response and a motion to dismiss Kerley's petition and first amendment, arguing that the claims raised therein-claims (1) and (2), as set out above-were insufficiently pleaded and meritless.
On March 15, 2017, the circuit court conducted an evidentiary hearing on Kerley's petition. On March 29, 2017, the circuit court issued an order granting Kerley's Rule 32 petition and setting aside his convictions and sentences on the ground that his trial counsel had been ineffective for not requesting a unanimity instruction, claim (1), as set out above; the circuit court found that claims (2) and (3), as set out above, had no merit. On April 25, 2017, both the State and Kerley filed motions to reconsider the circuit court's judgment. The circuit court did not issue a ruling on either motion; therefore, both motions were denied by operation of law 30 days after the circuit court's March 29, 2017, order. See, e.g., Loggins v. State, 910 So.2d 146, 148-49 (Ala. Crim. App. 2005). On April 7, 2017, and May 5, 2017, respectively, the State and Kerley filed notices of appeal.
Standard of Review
"[W]here there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, '[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.' " Boyd v. State, 913 So.2d 1113, 1122 (Ala. Crim. App. 2003) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala. Crim. App. 1992) ). However, "when the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001). Additionally, "where a trial court does not receive evidence ore tenus, but instead makes its judgment based on the pleadings, exhibits, and briefs, the ore tenus standard's presumption of correctness does not apply to the trial court's factual findings and it is the duty of the appellate court to judge the evidence de novo." Ex parte Horn, 718 So.2d 694, 705 (Ala. 1998).
*897 Likewise, where a trial court makes its judgment based on the "cold trial record," no presumption of correctness applies to the trial court's findings, and the appellate court must review the evidence de novo. Ex parte Hinton, 172 So.3d 348, 353 (Ala. 2012).
" 'The burden of proof in a Rule 32 proceeding rests solely with the petitioner, not the State.' Davis v. State, 9 So.3d 514, 519 (Ala. Crim. App. 2006), rev'd on other grounds, 9 So.3d 537 (Ala. 2007). '[I]n a Rule 32, Ala. R. Crim. P., proceeding, the burden of proof is upon the petitioner seeking post-conviction relief to establish his grounds for relief by a preponderance of the evidence.' Wilson v. State, 644 So.2d 1326, 1328 (Ala. Crim. App. 1994). Rule 32.3, Ala. R. Crim. P., specifically provides that '[t]he petitioner shall have the burden of ... proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' "
Wilkerson v. State, 70 So.3d 442, 451 (Ala. Crim. App. 2011).
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his or her counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. "To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances." Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987). " 'This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' " Lawhorn v. State, 756 So.2d 971, 979 (Ala. Crim. App. 1999) (quoting Hallford v. State, 629 So.2d 6, 9 (Ala. Crim. App. 1992) ). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id."It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).
"In order to succeed on a claim of ineffective assistance of counsel, a petitioner must meet both prongs of the standard set out in Strickland." Davis v. State, 184 So.3d 415, 430 (Ala. Crim. App. 2014). "Because both prongs of the Strickland test must be satisfied to establish ineffective assistance of counsel, the failure to establish one of the prongs is a valid basis, in and of itself, to deny the claim," and a reviewing court need not " 'address both components of the inquiry if the [petitioner] makes an insufficient showing on one.' " Clark v. State, 196 So.3d 285, 303 (Ala. Crim. App. 2015) (quoting Strickland, 466 U.S. at 697 ).
Analysis
I.
The State contends that the circuit court erred in granting Kerley relief *898 on the ground that his trial counsel was ineffective for not requesting a unanimity instruction. Specifically, the State argues that because Kerley did not call his trial counsel to testify at the evidentiary hearing he necessarily failed to prove that his counsel's decision not to request a unanimity instruction was deficient and was not the result of reasonable trial strategy. The State also argues that, even if counsel's decision could be considered deficient performance, it caused no prejudice to Kerley because, according to the State, under the circumstances in this case, any error in the jury's not being given a unanimity instruction was harmless.
Kerley argues, on the other hand, that his failure to call his trial counsel to testify at the evidentiary hearing is not fatal to this claim of ineffective assistance of counsel because, he says, counsel's conduct in not requesting a unanimity instruction in the face of both specific and generic evidence of sexual abuse " 'was so outrageous that no competent attorney would have engaged in it.' "[4] (Kerley's brief, p. 21 (quoting State v. Gissendanner, [Ms. CR-09-0998, October 23, 2015] --- So. 3d ----, ---- (Ala. Crim. App. 2015), quoting in turn, Sanders v. State, 346 S.W.3d 26, 34 (Tex. App. 2011) ). Kerley also argues that he was prejudiced by counsel's failure to request a unanimity instruction because, he says, in a case involving both specific and generic evidence of sexual abuse it is impossible to know on which incidents-the specific or the generic-the jury's verdict was based.[5]
This Court has recognized that "[i]t is extremely difficult, if not impossible, to prove a claim of ineffective assistance of counsel without questioning counsel about the specific claim, especially when the claim is based on specific actions, or inactions, of counsel that occurred outside the record." Broadnax v. State, 130 So.3d 1232, 1255 (Ala. Crim. App. 2013). However, it is unnecessary for this Court to determine whether Kerley's failure to call his trial counsel to testify at the Rule 32 hearing is fatal to this particular claim of ineffective assistance of counsel because, even if it was not, we nonetheless conclude that the circuit court erred in granting Kerley relief on this claim.
Generally, Alabama follows a strict-election rule, by which the State must elect the offense on which it will proceed "[w]here the evidence discloses two or more offenses growing out of distinct and separate transactions." R.L.G. v. State, 712 So.2d 348, 355 (Ala. Crim. App. 1997), aff'd, 712 So.2d 372 (Ala. 1998) (internal quotation marks omitted). However, the strict-election rule does not apply in cases of sexual abuse of children by a resident abuser that involve purely generic evidence, i.e., "evidence of sexual abuse perpetrated upon a young child so often *899 and in so many locations 'by an abuser residing with the child ... that the young child loses any frame of reference in which to compartmentalize the abuse into "distinct and separate transactions," ' " or that involve a combination of both specific and generic evidence. Shouldis v. State, 38 So.3d 753, 761 n.4 (Ala. Crim. App. 2008) (quoting R.L.G., 712 So.2d at 356 ). In those cases, the either/or rule applies: "The 'either-or' rule provides that the prosecution must elect which single act it is relying [on] for a conviction or else the trial judge must give a specific unanimity instruction." R.A.S. v. State, 718 So.2d 117, 119 (Ala. 1998).
"[T]he 'either/or' rule ... as that rule is modified for generic evidence [provides that] where the evidence of more than one incident of sexual molestation to a child victim by a resident child molester is purely generic and where 'there is no reasonable likelihood of juror disagreement as to particular acts, and the only question [for the jury] is whether or not the defendant in fact committed all of [the incidents],' the trial court should instruct the jury that it can find the defendant guilty only if it unanimously agrees that he committed all the incidents described by the victim."
R.L.G., 712 So.2d at 367 (emphasis omitted). Moreover:
"In cases, such as this one, that involve both generic and specific evidence, where evidence of multiple culpable acts is adduced to prove a single charged offense, jury unanimity must be protected. Therefore, in such a case, the defendant is entitled either to have the State elect the single act upon which it is relying for a conviction or to have the court give a specific unanimity instruction. If the State chooses not to elect the specific act, the trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, thereby assuring a unanimous verdict on one criminal act."
R.A.S., 718 So.2d at 122 (footnote omitted).
The either/or rule is clearly applicable in this case. Thus, we agree with the circuit court that trial counsel should have either requested that the State elect a specific instance of sexual abuse or requested that the trial court give the jury a unanimity instruction and that counsel's failure to do so constituted deficient performance. However, our analysis does not end with a finding of deficient performance. We must also determine whether that deficient performance actually prejudiced Kerley. We conclude that it did not.
In R.L.G., supra, this Court recognized that an error under the either/or rule may be harmless in certain circumstances:
"Although the trial court erred, we conclude that it is harmless error. In [ People v.] Jones, [51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643 (1990),] the court observed that '[s]ome cases found harmless any error in failing either to select specific offenses or [to] give a unanimity instruction, if the record indicated the jury resolved the basic credibility dispute against defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed.' 51 Cal.3d at 307, 270 Cal.Rptr. at 617, 792 P.2d at 649 (emphasis in original; citing People v. Moore, 211 Cal.App.3d 1400, 1415-16, 260 Cal.Rptr. 134 (1989) ; People v. Winkle, 206 Cal.App.3d [822,] at 828-30, 253 Cal.Rptr. 726 [ (1988) ] ; People v. Schultz, 192 Cal.App.3d 535, 539-40, 237 Cal.Rptr. 513 (1987) ; People v. Deletto, 147 Cal.App.3d 458, 466, 470-73 & n.10, 195 Cal.Rptr. 233 (1983), cert. denied, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984) ). For example, in Winkle, the victim testified that the defendant, her uncle, *900 had molested her regularly each week; the prosecution made no election and no unanimity instruction was given. The court concluded that no prejudice resulted. Because the defendant made only a weak attempt to assert an alibi defense, the ultimate question for the jury was the defendant's credibility and the verdict necessarily implied that the jury unanimously believed the victim.
"We find further guidance in Covington [v. State, 703 P.2d 436, modified on rehearing, 711 P.2d 1183 (Alaska Ct. App. 1985) ], although the court addressed the issue under a standard different from our harmless error standard. There, the court observed:
" 'In a case where discrete incidents of sexual abuse are charged together in a single count, and impeaching and contrary evidence of differing weight is offered to rebut the several incidents, a real possibility exists that individual jurors will reject some incidents, based upon an evaluation of the impeaching and contrary evidence, but accept other incidents as proven. In such a case, the twelve jurors may agree that the defendant committed at least one of the incidents, but be in general disagreement as to which incident that was.'
" 711 P.2d at 1185. The court then noted that the victim, who was 18 years' old at the time of trial, was unable to differentiate between the various acts committed against her by her father from the time she was 9 or 10 years' old, including sexual intercourse, 'practically every night,' 703 P.2d at 438. The appellant denied the sexual intercourse, and 'no impeaching or contrary evidence was more applicable to one incident than another.' 711 P.2d at 1185. The court found that, upon these circumstances, each juror was confronted with the straight question of credibility and that the jury's guilty verdict established that it accepted the victim's testimony and concluded that the appellant was guilty beyond a reasonable doubt. The court concluded that 'the record unequivocally establishes that the trial court's error in not requiring the state to elect among incidents, or alternatively, in failing to provide a curative instruction, did not appreciably affect any verdict against [the appellant].' 711 P.2d at 1185. Compare State v. Fitzgerald, 39 Wash.App. 652, 694 P.2d 1117 (1985) (error in permitting a jury to consider multiple incidents of sexual assault against the same victim charged in a single count, in the absence of an election by the prosecution or a clarifying instruction, was not harmless, in light of conflicting testimony of the victims as to various incidents of sexual abuse)."
712 So.2d at 368 (footnote omitted).
We recognize that R.L.G. was a case involving purely generic evidence, while this case involves a combination of both specific and generic evidence. However, that does not preclude a finding of harmless error. Harmless-error analysis is a fact-specific inquiry, requiring a reviewing court to examine the entire record in the cause to determine whether "the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, Ala. R. App. P. In cases involving purely generic evidence, this Court has found the failure to give the jury a unanimity instruction to be harmless in some circumstances, see R.L.G., supra, but not harmless in other circumstances, see Shouldis, supra. In cases involving both specific and generic evidence, we can certainly envision circumstances in which the failure to give a unanimity instruction would not be harmless, but under the circumstances in this case, it was.
As set forth above, M.L. testified to a specific incident of sexual abuse on her *901 ninth birthday and the State also presented generic evidence of other incidents of abuse occurring over the next several years. J.H. testified that Kerley first abused her when she was eight years old and that he continued to do so until she moved in with her father several years later.[6] Kerley denied the allegations of sexual abuse and he attacked the credibility of both M.L. and J.H. at trial. The only true question for the jury in this case was the victims' credibility, and Kerley admits that. At trial, Kerley argued to the jury that the case "boil[ed] down to did [the victims] tell the truth," (Record on Direct Appeal, R. 240), and, at the Rule 32 evidentiary hearing, Kerley argued that "the single largest issue is the credibility of these two girls." (R. 21.) Because Kerley denied all the allegations against him and the only true issue before the jury in this case was the credibility of the victims:
"There was absolutely no rational basis by which the jury could have found that [Kerley] committed one of the incidents but not the others. Any juror believing that one incident took place would have unquestionably believed that all the incidents took place. Thus, we can say that no rational juror could have had a reasonable doubt as to any of the incidents alleged. By returning guilty verdicts, the jurors must necessarily have unanimously rejected [Kerley's] defense, and by believing the victim[s], unanimously found that all the incidents occurred. We must conclude that, under these circumstances, the jury in fact unanimously agreed on the act forming the basis of the verdicts. Moreover, [Kerley's] rights to notice of the charges against him, to the opportunity to formulate a defense, and to be convicted only upon sufficient proof were not injuriously affected."
R.L.G., 712 So.2d at 369. See, e.g., State v. Ashkins, 357 P.3d 490, 502, 357 Or. 642, 662-63 (2015) (holding that the failure to give a unanimity instruction in a case involving both specific and generic evidence was harmless where the defendant denied that the sexual acts occurred, attacked the victim's credibility, and maintained that the victim was influenced by her mother and grandmother because "nothing in the defense theory called into question [the victim's] description of any particular occurrence" and "there was nothing to indicate that, in evaluating the evidence to determine if those offenses had been committed, the jury would have reached one conclusion as to some of the occurrences but a different conclusion as to others"); Anderson v. State, 337 P.3d 534, 543 (Alaska Ct. App. 2014) (holding that the failure to give a unanimity instruction was harmless where the charges were based on "factually distinct" acts of sexual abuse, but the defendant asserted a "blanket defense" denying all the allegations, because even if "it was logically possible that the jurors might believe that the State had proved some of these acts of sexual contact but not others ... it was not a reasonable probability, given the way [the] case was litigated"); and Baker v. State, 948 N.E.2d 1169, 1179 (Ind. 2011) (holding that the failure to give a unanimity instruction in a case involving both specific and generic evidence was harmless where "the only issue was the credibility of the alleged victims [and t]he only defense was to undermine the young women's credibility by, among other things, pointing out inconsistencies in their statements, and advancing the theory that they were lying").
Thus, although we agree with the circuit court that trial counsel should have *902 requested either that the State elect a specific instance of abuse or that the trial court give a unanimity instruction to the jury, we do not agree with the circuit court's finding that Kerley was prejudiced by counsel's failure to do so. Under the circumstances in this case, the lack of either an election by the State or a unanimity instruction was harmless and, therefore, counsel's failure to request either an election or a unanimity instruction was harmless. Because counsel's deficient performance was harmless, Kerley has not satisfied his burden of proving that he was prejudiced as required by Strickland. "Harmless error does not rise to the level of the prejudice required to satisfy the Strickland test." Gaddy v. State, 952 So.2d 1149, 1160 (Ala. Crim. App. 2006). Therefore, the circuit court erred in granting Kerley relief on this claim of ineffective assistance of counsel and its judgment in that regard must be reversed.
II.
Kerley contends that the circuit court erred in denying his other two claims of ineffective assistance of counsel-that his counsel was ineffective for not calling his brother to testify and not eliciting testimony from his sister that M.L. had allegedly recanted her allegations of sexual abuse and for not calling to testify Kerley's adult daughter to refute M.L.'s testimony that she was abused on her ninth birthday.
At the Rule 32 evidentiary hearing, Kerley called his sister and his brother to testify. Kerley's sister, who also testified at trial, testified at the hearing that on "Easter Sunday of 2010,"[7] M.L. told her that Kerley "never touched [her] and [J.H.] or abused [them] in any way" and that their mother had "told [them] to say that." (R. 9.) She also stated that she told Kerley's counsel about M.L.'s "recantation." (R. 10.) Kerley's brother testified at the hearing that "on Easter in 2010," M.L. told him that Kerley " 'never did anything to us,' that [their mother] told us to say that." (R. 16.) He also testified that he spoke with Kerley's counsel about M.L.'s statements.
Because Kerley did not raise the claim regarding his daughter until after the evidentiary hearing, Kerley did not call his daughter to testify at the hearing, although he did attach to his second amendment raising this claim an affidavit from his daughter in which she averred that she and her sister had spent all day and all night at Kerley's home on M.L.'s ninth birthday and that M.L. and J.H. were "never left unattended." (C. 114.)
As noted previously in this opinion, Kerley did not call his trial counsel to testify at the Rule 32 hearing, and his failure to do so is fatal to these particular claims of ineffective assistance of counsel. As already noted, "[i]t is extremely difficult, if not impossible, to prove a claim of ineffective assistance of counsel without questioning counsel about the specific claim, especially when the claim is based on specific actions, or inactions, of counsel that occurred outside the record." Broadnax v. State, 130 So.3d 1232, 1255 (Ala. Crim. App. 2013). This is so because there is a presumption that counsel acted reasonably and that presumption " ' "is like the 'presumption of innocence' in a criminal trial," ' and the petitioner bears the burden of disproving that presumption." Stallworth v. State, 171 So.3d 53, 92 (Ala. Crim. App. 2013) (quoting Hunt v. State, 940 So.2d 1041, 1059 (Ala. Crim. App. 2005), quoting in turn, Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) ). "When a record is silent as to the reasons for an attorney's actions we must presume that counsel's conduct was reasonable."
*903 Hooks v. State, 21 So.3d 772, 793 (Ala. Crim. App. 2008). " 'If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief on [an] ineffective assistance of counsel claim.' " Davis v. State, 9 So.3d 539, 546 (Ala. Crim. App. 2008) (quoting Howard v. State, 239 S.W.3d 359, 367 (Tex. Crim. App. 2007) ).
Decisions regarding what witnesses to call to testify "are typically considered strategic decisions, and do not constitute per se deficient performance." Reeves v. State, 226 So.3d 711, 750 (Ala. Crim. App. 2016). " 'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.' " Johnson v. State, [Ms. CR-05-1805, September 28, 2007] --- So.3d ----, ---- (Ala. Crim. App. 2007) (opinion on return to remand), judgment vacated on other grounds by Johnson v. Alabama, 582 U.S. ----, 137 S.Ct. 2292, 198 L.Ed.2d 720 (2017) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ). See also Oliver v. State, 435 So.2d 207, 208-09 (Ala. Crim. App. 1983) ("The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.").
The burden was on Kerley to prove by a preponderance of the evidence that his counsel's decisions not to question his sister at trial about M.L.'s alleged recantation, not to call his brother to testify about M.L.'s alleged recantation, and not to call his daughter to refute M.L.'s allegation of abuse on her ninth birthday were not the result of reasonable strategy. However, because Kerley did not call his trial counsel to testify at the evidentiary hearing, the record is silent as to the reasons for counsel's actions in this regard. Where " 'the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief on [an] ineffective assistance of counsel claim.' " Davis, 9 So.3d at 546 (citations omitted).
We note that Kerley argues that counsel's decisions "def[y] logic" and, therefore, "cannot be regarded as trial strategy," particularly in a case involving a resident abuser. (Kerley's brief, p. 38.) However, there could be any number of strategic reasons for not calling particular witnesses in any given case. As the State correctly points out, "[a]s a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias." State v. Gissendanner, [Ms. CR-09-0998, October 23, 2015] --- So. 3d ----, ---- (Ala. Crim. App. 2015) (quoting Bergmann v. McCaughtry, 65 F.3d 1372, 1380 (7th Cir. 1995) ). Moreover, counsel could have decided not to elicit testimony about M.L.'s alleged recantation because the testimony at trial indicated that M.L. first made the allegation of sexual abuse against Kerley in September 2010,[8] five months after Kerley's sister and brother claimed that M.L. had recanted the allegation.[9] Indeed, in their affidavits, which Kerley attached to his first amendment, both Kerley's sister and brother stated that when M.L. made the statements to them on Easter in 2010 they thought she was referring to different allegations *904 against Kerley that M.L. had made to the Department of Human Resources and that had been investigated and dismissed.
Because Kerley failed to call his trial counsel to testify at the evidentiary hearing, the record is silent as to the reasoning for counsel's actions. Kerley failed to prove that his counsel's decisions not to question his sister at trial about M.L.'s alleged recantation, not to call his brother to testify about M.L.'s alleged recantation, and not to call his daughter to refute M.L.'s allegation of abuse on her ninth birthday constituted deficient performance. Therefore, the trial court properly denied these claims of ineffective assistance of counsel.
III.
Kerley also contends that the cumulative effect of counsel's errors prejudiced him. Although we question whether this argument was properly raised by Kerley in the circuit court, it is nonetheless meritless.
"Other states and federal courts are not in agreement as to whether the 'cumulative effect' analysis applies to Strickland claims. As the Supreme Court of North Dakota noted in Garcia v. State, 678 N.W.2d 568, 578 (N.D. 2004) :
" 'Garcia argues that even if trial counsel's individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet Strickland's test. See Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995) ("In making this showing, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test"); but see Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own").'
"See also Holland v. State, 250 Ga.App. 24, 28, 550 S.E.2d 433, 437 (2001) ('Because the so-called cumulative error doctrine is inapplicable, each claim of inadequacy must be examined independently of other claims, using the two-prong standard of Strickland v. Washington.' (footnote omitted)); Carl v. State, 234 Ga.App. 61, 65, 506 S.E.2d 207, 212 (1998) ('Georgia does not recognize the cumulative error rule.'); Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) ('Not surprisingly, it has long been the practice of this Court to individually assess claims under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir. 1986) (considering ineffective assistance claims individually rather than considering their cumulative impact.)').
"We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672 (Ala. 1988) ('We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings.'). Also, in Ex parte Bryant, [951] So.2d [724] (Ala. 2002), the Supreme Court held that the cumulative effect of errors may require reversal."
Brooks v. State, 929 So.2d 491, 514 (Ala. Crim. App. 2005).
Assuming, without deciding, that cumulative error applies to claims of ineffective assistance of counsel, "[t]he correct rule is that, while, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require *905 reversal under Rule 45, [Ala. R. App. P.,] if the accumulated errors have 'probably injuriously affected substantial rights of the parties,' then the cumulative effect of the errors may require reversal." Ex parte Woods, 789 So.2d 941, 942-43 n.1 (Ala. 2001) (emphasis added). In this case, we have found only a single error by counsel-counsel's failure to either request that the State elect a specific instance of abuse or request that the trial court give the jury a unanimity instruction. We found, however, that Kerley failed to prove that counsel committed any errors relating to his other claims of ineffective assistance of counsel. Because there was only one error, there can be no cumulative error.
Conclusion
For the reasons stated in Parts II and III of this opinion, we affirm that portion of the circuit court's judgment denying Kerley relief on his claims that his counsel was ineffective for not presenting testimony from certain witnesses. For the reasons stated in Part I of this opinion, we reverse that portion of the circuit court's judgment granting Kerley Rule 32 relief, and we remand this cause for the circuit court to reinstate Kerley's convictions and sentences. No return to remand need be filed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
Windom, P.J., and Welch, Burke, and Joiner, JJ., concur.

This Court may take judicial notice of its own records, and we do so in this case. See Nettles v. State, 731 So.2d 626, 629 (Ala. Crim. App. 1998), and Hull v. State, 607 So.2d 369, 371 n.1 (Ala. Crim. App. 1992).

The one-year limitations period in Rule 32.2(c) expired on September 18, 2016, which was a Sunday. Therefore, pursuant to Rule 1.3(a), Ala. R. Crim. P., Kerley had until September 19, 2016, to timely file his petition.

The second amendment was filed after the circuit court had conducted an evidentiary hearing. However, the State did not object to the second amendment in the circuit court and the court addressed the claim raised therein in its order.

In its order, the circuit court found that "the testimony at trial described several occasions of generic incidents of sexual abuse and at least one incident describing a specific act of sexual abuse against each victim, M.L. and J.H." (C. 17.) The State does not dispute this finding in its initial brief on appeal, but untimely does so for the first time in its reply brief. Therefore, for purposes of this appeal, we accept the circuit court's finding that the instant case involves both specific and generic evidence of sexual abuse.

Kerley further argues that the harmless-error doctrine cannot apply to claims of ineffective assistance of counsel because such claims necessarily include, as an element, the requirement of prejudice, thus precluding a finding that counsel's ineffectiveness could be harmless. However, Kerley misapprehends the nature of the State's argument regarding harmless error. The State does not argue that counsel's ineffectiveness was harmless. Rather, the State argues that even if counsel's performance was deficient, that deficient performance was harmless, thus resulting in no prejudice under Strickland.

In its order, the circuit court found that J.H.'s testimony recalling the first incident of sexual abuse when she was eight years old was a specific incident of abuse. See note 4, supra.

We take judicial notice that in 2010, Easter was on April 4, 2010.

At trial, M.L. testified that she had told a friend about the abuse when she was 12 years old and that she had written on the Internet about being the victim of molestation. However, the record indicates that the first time M.L. actually accused Kerley of sexual abuse was in September 2010.

"Recant" is defined as "to withdraw or renounce prior statements or testimony formally or publicly." Black's Law Dictionary 1459 (10th ed 2014) (emphasis added). M.L. could not have recanted her allegation of sexual abuse against Kerley before she made it.