Filed 7/27/22  P. v. Mendoza-Heredia CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ALFREDO MENDOZA-HEREDIA,<br><br>  Defendant and Appellant. | G060001<br><br>(Super. Ct. No. 17CF2807)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

        Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, A. Natasha Cortina, Acting Assistant Attorney General, Eric A. Swenson and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

                        *        *        *

Defendant Alfredo Mendoza-Heredia was charged and convicted of ten counts of child molestation involving the daughter of his longtime girlfriend and the daughter's cousin. The testimony at trial revealed he regularly abused both victims over several years. The jury was given a unanimity instruction as to all counts except for count six, which related to oral copulation. On appeal, Mendoza-Heredia argues the court erred by failing to give the instruction on count six. We conclude that any such error was harmless. Based on the evidence and arguments presented at trial, there is no rational basis to conclude the jury could have found some acts of oral copulation occurred but others did not. As such, we affirm the judgment.

## I

## FACTS AND PROCEDURAL HISTORY

### A. *The Charges*

In February 2018, Mendoza-Heredia was charged with ten counts of child molestation pertaining to two victims. As to the first victim, M.L., he was charged with six counts occurring between May 3, 2011, and May 2, 2017. Five of these counts were for committing forcible lewd acts on a child under 14 years old (§ 288, subd. (b)(1)), including touching her vagina over clothing (count one), touching her vagina on the skin (count two), touching her breasts (count three), causing her to touch his penis (count four), and putting his mouth on her vagina (count five). Count six was for aggravated sexual assault on a child involving oral copulation (§ 269, subd. (a)(4)).

Mendoza-Heredia was charged with four counts relating to the second victim, K.C., occurring between October 21, 2007, and October 20, 2013. Three were for committing lewd acts on a child under 14 years old (§ 288, subd. (a)), including touching her vagina over clothing (count seven), touching her vagina on skin (count eight), and touching her breasts (count nine). Count ten was for attempted lewd act on a child under 14 years old, involving placing his penis on the victim's mouth (§§ 288, subd. (a), 664).

2

There was also a multiple victim allegation as to all counts except count six under section 667.61, subdivision (b).

## B. *Testimony at Trial*

M.L. and K.C. are cousins, whose mothers are sisters. Both families lived in Santa Ana and were close during the relevant period. Mendoza-Heredia was in a relationship with K.C.'s mother for 10 years, and they lived together for eight years. Mendoza-Heredia began living with K.C.'s family in 2008, when K.C. was eight years old.

### 1. *M.L.'s Testimony*

M.L. testified at trial that Mendoza-Heredia began molesting her when she was around six years old and continued until she was in fifth or sixth grade. He picked M.L. up from school several times a week and would molest her in his truck "every time he picked [her] up." Most of the abuse occurred in the truck. Mendoza-Heredia touched M.L.'s breast and vaginal areas both over and under her clothes over 10 times from when she was six or seven until she was 11 or 12 years old. He put his mouth on her breasts between five to ten times when M.L. was between nine and 12. At least five times when M.L. was between eight and 10 years old, he forced her to hold his penis and move her hand up and down until he ejaculated. He placed his mouth on the skin of her vagina around one to five times when she was between the age of 10 and 12. M.L. also testified Mendoza-Heredia forced her to orally copulate him in his truck about five to 10 times when she was between 10 and 12 years old.

Aside from the truck, Mendoza-Heredia molested M.L. at her aunt's house (i.e., at K.C.'s house) when she was between six to 12 years old. At that location, he touched her vagina over her clothes between five to 10 times and under her clothes around one to five times, and he sucked on her breasts more than 10 times.

3

Mendoza-Heredia also lived with M.L.'s family for about two years. While he was living there, Mendoza-Heredia touched M.L.'s vagina with his hand both over her clothes and on the skin. But M.L. was unable to recall how many times that occurred. However, she recalled an incident when she was nine or 10 years old. She was at home playing with a friend in the kitchen. Mendoza-Heredia called her to the bathroom, where he had just taken a shower. When M.L. arrived, he removed his towel and forced her to orally copulate him for one to two minutes.

### 2. K.C.'s Testimony

K.C. testified Mendoza-Heredia began sexually abusing her when she was eight years old and continued to do so until she was 17. The abuse occurred at home and in his car and took place at least once a day while she was between eight and 14 years old. Among other things, Mendoza-Heredia touched her breasts, vaginal area, and buttocks both over and under her clothes. Other times, she would wake up and feel his erect penis on her lips. Though he typically left the room after she woke up, he once tried to force his penis into her mouth, but she was able to push him away.

### 3. Defense

Mendoza-Heredia categorically denied all the allegations of sexual abuse and testified he never touched K.C. or M.L. inappropriately.

## C. Verdict and Sentence

The trial court gave the jury a unanimity instruction as to every count, except count six (oral copulation with M.L.). The instruction provided that the jury must not find Mendoza-Heredia guilty on the relevant counts unless "[y]ou all agree that the People have proved that the defendant committed at least one of [the alleged] acts and you all agree on which act he committed for each offense" or "[y]ou all agree that the

People have proved that the defendant committed all the acts alleged to have occurred during [the relevant] time period and have proved that the defendant committed at least the number of offenses charges."

After a few hours of deliberation, the jury found Mendoza-Heredia guilty on all counts and found the multiple victim allegation true. He was sentenced to a total of 75 years to life in prison. Specifically, the court imposed consecutive terms of 15 years to life for each of counts one through five. It imposed terms of 15 years to life for each of counts six through nine to be served concurrent to count one. Finally, the court imposed the middle term of three years for count ten also to be served concurrent with count one.

On appeal, Mendoza-Heredia argues the court erred by failing to give a unanimity instruction for count six. The Attorney General concedes error but contends it was harmless. We agree with the Attorney General.

II

DISCUSSION

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' . . . 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt

5

that a defendant must have done *something* sufficient to convict on one count.'" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

"In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given [i.e., the jury must unanimously agree on the specific act]. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*People v. Jones* (1990) 51 Cal.3d 294, 321-322.)

It is undisputed the trial court erred by failing to give any unanimity instruction for count six. However, even if the court erred by failing to do so, reversal is not required if the error was harmless. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.) There is a split of authority on the harmless error review standard in unanimity instruction cases. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576.) The more rigorous standard states an error is harmless "if we can conclude beyond a reasonable doubt that all jurors must have unanimously agreed on the act(s) constituting the offense." (*People v. Norman* (2007) 157 Cal.App.4th 460, 466.) The laxer standard asks "whether 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*People v. Vargas* (2001) 91 Cal.App.4th 506, 561-562.) We need not resolve this issue because the result would be the same under either standard.

Under the more stringent standard, "'[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is

6

harmless. [Citation.] Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless.'" (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.) Under this analysis, "[t]he important question is whether there was anything in the record by way of evidence or argument to support discriminating between the . . . incidents such that the jury could find that appellant committed one molestation but not the other." (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1501-1502.) If there is not, then "[f]ailure to deliver a unanimity instruction [is] harmless beyond a reasonable doubt." (*Ibid*.)

For example, in *People v. Deletto* (1983) 147 Cal.App.3d 458, 462-463 (*Deletto*), the defendant was charged and convicted of various sex crimes relating to his daughter, including committing a lewd act on a child, oral copulation with a minor, sodomy with a minor, and unlawful sexual intercourse. Though the defendant was charged and convicted of a single count of oral copulation, the victim described two acts at trial. (*Id*. at p. 463.) In the first, the defendant made oral contact with the victim's genital area. In the second, the defendant placed his penis in her mouth and ejaculated. Both acts occurred at separate times during the summer of 1980 in the family home. (*Id*. at p. 465.) The defendant testified he had never touched his daughter sexually and claimed she had been molested by his ex-wife's current husband. (*Id*. at pp. 463, 467-468.)

On appeal, the defendant argued the trial court erred by failing to give a unanimity instruction as to the oral copulation charge. (*Deletto*, *supra*, 147 Cal.App.3d at pp. 464-465, 473.) The appellate court ruled the error was harmless beyond a reasonable doubt. Among other things, there was nothing in the "record by way of evidence or argument by which the jury could have found that defendant committed one act of oral copulation but not the other." (*Id*. at p. 466.) Only one witness, the victim, testified as to the relevant acts. (*Id*. at p. 466.) And nothing in the victim's testimony, the defense, or

7

the other evidence provided any basis for the jury to distinguish between the two acts or to conclude that one act had occurred while the other had not. (*Id*. at pp. 467-468.)

Likewise, in *People v. Winkle* (1988) 206 Cal.App.3d 822 (*Winkle*), the defendant was convicted of a single count of a lewd act on a minor, his niece. The evidence at trial showed the victim lived with the defendant for three months while her mother was having difficulties. The victim testified that during this period, defendant put his penis in her vagina at least once a week when they were home alone. She also stated that similar acts occurred twice at the defendant's workplace. (*Id*. at p. 824.) The defendant denied the allegations at trial and asserted the victim was lying because she was mad at him. (*Id*. at pp. 825, 828.)

The defendant sought reversal of the conviction based on the trial court's failure to give a unanimity instruction. The appellate court affirmed, concluding any such error was harmless beyond a reasonable doubt. (*Winkle*, *supra*, 206 Cal.App.3d at p. 830.) It reasoned the case came "down to a question of credibility—whether the jury believed [the victim] or [the defendant]." (*Id*. at p. 829.) The victim "did not testify about any specific dates, but rather a series of occurrences at home and at [the defendant's] place of work." (*Id*. at pp. 829-830.) Based on the jury's findings, it must have believed the victim, not the defendant. "Since at trial no attempt was made to distinguish the acts which occurred at [the defendant's] home from those which occurred at [his] place of work . . . the jury had no basis on which to distinguish between the acts about which [the victim] testified." (*Id*. at p. 830.)

Here, Mendoza-Heredia was convicted of a single count of sexual assault involving oral copulation with M.L. The record shows multiple acts of oral copulation were described at trial, including five to 10 incidents in Mendoza-Heredia's truck and a single incident at M.L.'s home. Like *Deletto* and *Winkle*, though, we see nothing in the record that provides a rational basis for believing the jury could have discriminated between any of these acts of oral copulation.

8

Only one witness, M.L., testified to the relevant acts.  At trial, she was asked if "there ever a time where you put your mouth on any part of the defendant's body?"  She answered yes and disclosed that Mendoza-Heredia had forced his penis into her mouth.  She then explained this occurred between five to 10 times in his truck and one time outside the truck, and then she described the bathroom incident above.  Nothing in her testimony provided any reason for the jury to conclude that some of the acts of oral copulation occurred but others did not.  Rather, she averred oral copulation had occurred and provided her best recollection as to the locations and frequency.  But neither the locations nor the timing of the acts was material in any regard.

Indeed, Mendoza-Heredia's closing argument never distinguished between any of the acts of oral copulation.  Rather, his only defense was a blanket denial of any sexual contact with M.L. or K.C.  The jury resoundingly rejected this defense, as it convicted him on all ten counts after only a few hours of deliberation.  Under the evidence and defense presented, the trial boiled down to a credibility contest between M.L./K.C. and Mendoza-Heredia.  The jury resolved the basic credibility dispute in this trial against Mendoza-Heredia.  It believed M.L. and K.C., not him.  Accordingly, based on the record, "it is reasonable to conclude that the jury believed beyond a reasonable doubt that [Mendoza-Heredia] committed all acts [of oral copulation] if he committed any.  Thus, the failure to give the unanimity instruction was harmless beyond a reasonable doubt." (*People v. Curry*, *supra*, 158 Cal.App.4th at p. 784.)

9

## III

## DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.